The relations of a corporate body to its employes, have been of late much considered in this court. (Laning v. N.Y. Cent.,etc., Co., 49 N.Y., 521; Flike v. Boston Albany R.R. Co.,
decided Nov. 11, 1873.)* It needs not that they be further discussed in the abstract, in this case. It will suffice that certain of the principles asserted or recognized in the late cases, be applied to the facts in this.
The plaintiff's intestate in his lifetime filled the place of a servant to the defendant, and it was his master. The duty which it owed to him, was to place beside him and over him competent fellow-servants, and to supply him and them, with adequate materials and appliances for the performance of any labor, which was laid upon him or them. It was liable for the negligence of a fellow-servant, who was charged by it with the performance of that duty, and who thereby, for the occasion, stood in its place as master. It was not liable for the negligence of a competent fellow-servant who *Page 611 
was not thus charged, though he might have had some authority and power of direction over the intestate and servants of his grade. Following these principles through the facts of this case, we shall come to the result, that the defendant was not guilty of negligence toward the intestate, and is not liable to the plaintiff.
The immediate cause of the death of the intestate was the falling of the arch. The immediate cause of the fall of it, was the removal of the "center" which gave it support. It is not shown, it is not probable, that it would have fallen but for that. The removal of the "center" was the act of either Lighthall, the contractor, or of Fripp, the foreman. The preponderance of the testimony is, that it was the act of Lighthall. It is certainly the most favorable view of the testimony possible for the plaintiff, that it was the act of Fripp. Then it was the act of a co-servant engaged in the same general business. He was not charged with the performance of defendant's duty, as that duty is above pointed out. He did not stand in its place as master, as did Coleby in the Laning case
(supra). He held the same relation to it, and to his co-servants, as did Westman in that case. Though with a power of direction over the intestate and others, he was still, as they were, subordinate. The defendant was not, then, prima facie
responsible for his act, though it was an act of negligence, for he was conceded to be of original and continued skill and competence for his position.
It is urged, however, that there was not furnished to the contractor sufficient "centers" for the proper progress of the work, and that this was negligence, and that it was the negligence of the defendant causative of the injury. But can it be said, in any legal sense, that a failure to furnish in fulfillment of the contract, as many "centers" as were needed or desired, was the negligent cause of the disaster? Let it be conceded for this case, that there was a failure to keep the contract to furnish them, did that give authority from the defendant, to either the contractor or the foreman, or was it the legal moving cause for either, to heed *Page 612 
lessly remove the still needful support to the arch? It will not be claimed that if the contractor, for lack of "centers" with which to carry on his work with such speed as he had right to use with his own men, had struck the one under the arch before its materials had hardened to self-support, and injury had happened to one of them, that the defendant would have been liable to the injured workman. (Winterbottom v. Wright, 10 M. W., 109.) And why not? Because it would have been the duty of the contractor, before he subjected the arch to the strain of its own weight, to learn if it was self-supporting, and it would have been his negligence if he did not; and his negligence would not have been a proximate or natural result, of a failure by the defendant to keep its contract with him. And besides, the defendant was not liable, for the contractor's negligence to the contractor's workmen. No more was a failure of the defendant to keep its contract, a proximate and natural cause of the negligence of the foreman in striking the "center" before the arch was stout enough. Equally was it his duty to know its true condition, and to make no rash experiment of its virtue; equally was it his negligence not so to do; no more was the defendant liable to his fellow-servants for his negligence therein.
Its contract was with Lighthall. He alone could suffer damage in contemplation of law from a breach thereof by it. Non-performance of it, if such there was, was not the cause, nor the causa causans of this ill result of an imprudent act. It did not have legal relations with it. It did not give authority for it. It did not make the removal of the support, before the mortar in the arch was sufficiently set, a matter of pressing necessity. The most it could naturally produce, was a cessation of the work, for the lack of the means to proceed with it. So that the act of removal, in legal contemplation, had its spring no farther back, than in the carelessness of him who directed it, be he Lighthall the contractor, or Fripp the foreman. For this the defendant is not liable.
The defendant is in a position to avail itself in this court *Page 613 
of these legal positions. The motion for a nonsuit made at the close of the proofs covered the points above discussed; so did the request to charge, which was refused; so did the exceptions to the charge delivered.
The judgment appealed from should be reversed and new trial ordered, with costs to abide the event.
All concur; Grover, J., in result.
Judgment reversed.
* 53 N.Y., 549