MARY QUIGLEY, as Administratrix of MICHAEL JOSEPH QUIGLEY, Deceased, Appellant, *v.* WILLIAM M. LEVERING et al., Respondents.

1. MASTER AND SERVANT — WHEN NEGLIGENCE OF FOREMAN THAT OF A FELLOW-SERVANT. A foreman in a shop, whose duty it is to see that a trolley employed for the transportation of iron plates to and from a punch, and running on a traveler built in sections to permit its being shifted to other parts of the shop, is cleaned and oiled, is not, as to such duty, a vice-principal, but the fellow-servant, of a shop laborer killed by the trolley running off the traveler when a drop bar, used to prevent the

working and running off of the trolley whenever the continuity of the track was broken by the shifting of any section of the traveler, failed to operate solely because of the foreman's failure properly to clean and oil it, since cleaning and oiling are not the work of a master but of a servant.

2. MASTER'S DUTY AS TO INSPECTION OF MACHINERY. The duty of a master to inspect such a device does not extend to the cleaning and oiling thereof, which are mere details of the work, but is confined to the condition of the machinery with reference to defects or want of repairs.

3. NEGLIGENCE OF FELLOW-SERVANT. A master is not liable for the death of a servant caused by a trolley running off its traveler because a drop bar, constructed to prevent its operation and running off whenever the continuity of the track was broken by the shifting of any section of the traveler, failed to work, where the mechanism was neither defective nor unsafe, but the accident resulted from the negligence of a fellow-servant who set the mechanism in motion without first looking up to see if everything was all right, as warned and required to do by the rules and instructions of the master, and without noticing the shifted section which was in plain sight near by.

4. MASTER'S DUTY AS TO APPLIANCE. A master who supplies an appliance which, when properly cared for, is safe for the purpose of preventing a trolley from running off a traveler when any section of the traveler is shifted and no notice of intent to do so is given, even if it be assumed that there was a standard article in general use for the purpose, is not negligent in failing to procure it.

*Quigley* v. *Levering*, 50 App. Div. 354, affirmed.

(Argued March 21, 1901; decided April 30, 1901.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 7, 1900, affirming a judgment in favor of defendants entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Philo P. Safford, Charles Donohue* and *Thomas G. Frost* for appellant. The evidence was sufficient to go to the jury upon the question whether the "automatic" was a reasonably safe device. (*Newall* v. *Bartlett*, 114 N. Y. 399; *Tomaselli* v. *G. C. Corp.*, 9 App. Div. 127; *Leonard* v. *Collins*, 70 N. Y. 90; *Palmer* v. *Conant*, 58 Hun, 333; *F. & B. T. Co.* v. *P. & T. R. Co.*, 54 Penn. St. 345; *Gardner* v. *M. C. R.*

*Co.*, 150 U. S. 349, 361; *Larkin* v. *Washington Mills Co.*, 45 App. Div. 6.) There was evidence sufficient to go to the jury upon the question whether defendants were negligent as to inspection of the "automatic." (*Prescott* v. *Ottman L. Co.*, 20 App. Div. 397; *Woods* v. *L. I. R. R. Co.*, 11 App. Div. 16; *Dorney* v. *O'Neill*, 49 App. Div. 8; *T. C. Co.* v. *Arrington*, 48 S. W. Rep. 59; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280; *Crowell* v. *Thomas*, 18 App. Div. 520; *Clarke* v. *Holmes*, 7 H. & N. 943; *Byrne* v. *Eastman's Co.*, 163 N. Y. 461; *Fox* v. *Le Comte*, 2 App. Div. 61.) It was for the jury to say whether defendants negligently failed to give decedent a safe place in which to work. (*Plank* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 607; *Kranz* v. *L. I. Ry. Co.*, 123 N. Y. 1; *Cavanagh* v. *O'Neill*, 27 App. Div. 48; 161 N. Y. 657; *Bagley* v. *C. G. Co.*, 13 Misc. Rep. 6; *Simmons* v. *Peters*, 20 App. Div. 251; *Cunningham* v. *S. A. P. Co.*, 49 App. Div. 380.)

*Eugene Lamb Richards, Jr.*, and *Arnold W. Sherman* for respondents. The defendants were free from any negligence which was the proximate cause of the accident, and the negligence of the plaintiff or his fellow-servants was the sole proximate cause thereof. (*Laidlaw* v. *Sage*, 158 N. Y. 73; *La Croy* v. *N. Y., L. E. & W. R. R. Co.*, 132 N. Y. 570; *Williams* v. *D., L. & W. R. R. Co.*, 116 N. Y. 628; *Graves* v. *Brewer*, 4 App. Div. 327; *Glassheim* v. *N. Y. E. Printing Co.*, 13 Misc. Rep. 174; *Crown* v. *Orr*, 140 N. Y. 450; *De Young* v. *Irving*, 5 App. Div. 499; *Knisley* v. *Pratt*, 148 N. Y. 372; *Monzi* v. *Friedline*, 33 App. Div. 217; *Hickey* v. *Taaffe*, 105 N. Y. 26.)

VANN, J. This action was brought to recover damages resulting from the death of the plaintiff's intestate, which was caused, as it is alleged, by the negligence of the defendants.

In 1896 the defendants, as copartners, carried on a manufacturing business in the city of New York, and the plaintiff's intestate was employed by them as an ordinary laborer about

the works.   The room in which he worked was about 60 feet
long, north and south, by 50 feet wide, east and west.   In
the center was a machine known as a punch, which was used
for the purpose of making holes in heavy iron plates.   Over
this punch, about 16 feet from the floor, was a traveler con-
sisting of three sections, each about 20 feet long, which, when
joined together, made a continuous track with sides project-
ing from the base upon which a trolley ran.   The trolley had
chains hanging down, which were used to attach the plates
for the purpose of transportation to the punch.   Each section
of the traveler could be disconnected from the others and
moved east or west 8 or 10 feet, where it could be united to
another traveler and form a part thereof.   When the three
sections were together the trolley could not run off, but when
one of the sections was gone the trolley, if put in motion,
would run off as soon as it reached the space which had been
occupied by the absent section.   As a safeguard against this
danger the defendant Levering, a mechanical engineer of long
experience, had invented an automatic drop bar, one of which
was attached to either end of each section.   It consisted of a
series of levers so arranged that when the sections were all
together the drop bar would be up in the air and the trolley
could be moved without difficulty; but when one of the sec-
tions was gone the drop bar was forced down by a counter-
weight and the trolley could not be moved.   This device was
new, having been used in the shop in question for about six
months, and for about eight months in another shop belong-
ing to the defendants in Philadelphia, but not elsewhere.
Although in constant use it had never failed to work prior to
the time when Quigley, the decedent, lost his life, except on
one occasion, which was not reported to the defendants or
their superintendent.   What then caused it to fail did not
appear, but no defect in design, materials or construction was
shown.   Quigley was at work in the shop when the automatic
device was first used, and he continued working there, with
an interval when he was absent, until the accident happened.

On the 16th of December, 1896, Quigley and one Jones

were working about the punch as assistants to Mr. Berterman, who operated the punch and sometimes helped work the trolley. The trolley had not been used for two hours, as they had been moving plates by means of a vehicle, called a buggy, which ran upon wheels resting upon the floor of the shop. After a while, in order to move a heavy plate, Berterman called for the trolley, which at the time was hanging over the punch. Not long before the north section had been moved over to the west and the drop bar on the middle section was up, which showed that it was not working. The north end of the middle section of the traveler was almost over their heads, and the drop bar, being up, was a conspicuous object in plain sight, so that if they had looked up they could have seen that the trolley would fall if set in motion toward them. They were in a hurry and did not look up, but Jones, when the trolley was called for, seized one of the depending chains and gave a quicker and heavier pull than usual toward the place where he and Quigley were standing, which was right under the space occupied by the north section when in line. As the drop bar was up and did not work, the trolley, weighing over 50 pounds, ran off, fell down upon Quigley, who was getting a plate ready to attach, and inflicted injuries which soon caused his death. At this time, 10 or 12 feet away, the north section was in plain sight with the chains, supporting a load of iron, hanging down to within 2 feet of the floor, all of which they could see without looking up. The drop bar did not work, because the oil on the sliding plates had become gummy, as the weather was cold, and some dust had settled upon a surface an inch and a quarter long. No dust could reach this spot when the sections were together, as they had been for three weeks prior to the day of the accident, during which period they had not been oiled. Immediately after the accident the apparatus was examined and found in good order, and a ladder, put up to make the examination, as it struck the traveler, caused the drop bar to fall. Sometimes the drop bar fell when the sections were in line, but this did no harm except to require replacement before the trolley could be moved.

It was the duty of Williams, the foreman, to take general charge of the shop and men, and to see that the machinery was kept in good order and the work properly done. He sometimes cleaned and oiled the automatic device, but it was generally done by the workmen, suitable materials being furnished for the purpose. The duty of Bruggeman, the superintendent, was to see that the foreman carried out the orders sent from the office. Scherveman was the outside superintendent, whose duties were not fully described. All the men, including Quigley, had been instructed to look up to the drop bar, to " watch for that thing up there," and see that everything was all right before using the trolley. Every week each man was paid by money placed in an envelope on which was printed the following : " Notice. All employes are cautioned to exercise all possible care to prevent accidents and are forbidden to use any tools, rope, timbers or other appliances without carefully inspecting same to see that they are in good order." This notice was signed by the defendants, under their firm name. The defendants had never heard that the drop bar had once failed to work and it had been frequently examined by one of them, who always found it in good order.

The relation of master and servant existed between the decedent and the defendants. It is the duty of a master to exercise reasonable care to furnish safe machinery for his servants to use and to keep the same in reasonably safe repair. He is not bound, as a carrier of passengers may be, to provide the best possible machinery or the safest appliances known, but only such as are reasonably safe when used with reasonable care. He is not called upon to procure other devices to secure greater safety, provided those furnished by him are reasonably safe. The test of responsibility is not whether he omitted to do something that he could have done, but whether he was reasonably careful and prudent. (*Kern v. De Castro,* 125 N. Y. 50; *Hickey* v. *Taaffe,* 105 N. Y. 26; *Marsh* v. *Chickering,* 101 N. Y. 396.) The servant assumes the ordinary risks of the service in which he is engaged, or such as he may discover by the use of reasonable care, as well

as the risk of injury from the negligence of competent fellow-servants. (*Perry* v. *Rogers*, 157 N. Y. 251; *Hussey* v. *Coger*, 112 N. Y. 614; *Sweeney* v. *Berlin & Jones Envelope Co.*, 101 N. Y. 520.)

There is no evidence that the automatic device in question was defective or unsafe in itself. The only danger was from neglecting to oil and clean it and the machinery with which it was connected. Cleaning and oiling are not the work of a master, but of a servant, and hence can be delegated to a competent person without responsibility for his negligence. (*Webber* v. *Piper*, 109 N. Y. 496, 499.) Williams was not a vice-principal with reference to this subject, at least, but a fellow-servant, and his negligence and that of the men under him, in failing to oil and clean the machinery was not charge-able to the defendants. (*Crispin* v. *Babbitt*, 81 N. Y. 516.) The duty of inspection did not, under the circumstances, extend to oiling and cleaning, which were mere details of the work, but was confined to the condition of the machinery with reference to defects, or the want of repairs. (*Cregan* v. *Marston*, 126 N. Y. 568.) The work was not so complex as to require further rules or instructions than such as were given.

Jones was also a fellow-servant of Quigley and his failure to obey orders and look up to see whether everything was all right overhead before he pulled the trolley toward the place where they stood was not the negligence of the defendants. No part of the machinery was concealed, but all, including the drop bar as it stood up, was in plain view. A glance upward would have shown that the north section of the traveler was out of line and that the drop bar was not work-ing, while a glance to the west would have shown the missing section, loaded with iron plates. Thus there was warning of danger from two independent directions, but both were dis-regarded. While Quigley was busy getting a plate ready to put the chain around it, Jones was not occupied. He had been instructed not to use the trolley without looking up to see that all was in order, yet he pulled it towards Quigley

quicker and harder than usual without looking to see whether he was thereby pulling a heavy weight down on Quigley's head. There was nothing to divert attention or excuse his violation of orders. The defendants were not shown guilty of negligence that contributed to the accident, which was conclusively proved to have been caused wholly by the negligence of fellow-servants of the decedent. (*Cullen* v. *Norton*, 126 N. Y. 1; *Loughlin* v. *State*, 105 N. Y. 159; *Devlin* v. *Smith*, 89 N. Y. 470; *Hofnagle* v. *N. Y. C. & H. R. R. R. Co.*, 55 N. Y. 608.)

Several exceptions relating to the admission of evidence were taken by the plaintiff, only one of which requires the expression of consideration. An expert, called by the plaintiff, was asked to "state whether or not a device for the purpose of preventing the trolley from running off the north end of the middle section and the north end if as it was placed there, could have been placed upon that section with a positive action so as to prevent the running off of the trolley unless some rigid part broke?" Notwithstanding the objection of the defendants was sustained the witness answered: "I know of another device in practical use designed to prevent the running off of trolleys placed upon sections arranged in line so as to be put as desired out of line. I have a sketch of it here." He was then asked if he knew where that device was in use and the objection that the evidence was irrelevant and incompetent was sustained and the plaintiff excepted.

The evidence offered did not go far enough to show that there was a standard article in general use for the purpose of preventing trolleys from running off the track when one section of a traveler is removed, and no notice of intent to do so was given. For this reason the objection was properly sustained. If, however, the offer had been broader, it is doubtful whether the evidence would have been admissible under the circumstances of this case. As the automatic device was a new invention, if it had appeared that the accident was caused by an imperfect design or was owing to a wrong principle of construction involving a departure from safe

methods as commonly applied, evidence to show the existence of a standard article would have been material. According to the evidence, however, the accident was not owing to an inferior design but to negligence in oiling and cleaning. The failure of the automatic bar to drop was completely accounted for by this neglect. The learned counsel for the plaintiff in his argument before us admitted that the accident was caused by friction resulting from lack of oiling and cleaning. The uncontradicted evidence showed that the device was safe when properly cared for, and hence, even if there was a standard article, the defendants, according to the authorities cited, were not obliged to procure it.

We find no error in the record that requires a reversal, and the judgment appealed from should, therefore, be affirmed, with costs.

Parker, Ch. J., Gray, Bartlett, Martin, Cullen and Werner, JJ., concur.

Judgment affirmed.