was to be held for the purpose of receiving them. Nobody testifies to it, and there are no facts in the case from which such an inference may be drawn. The complaint was oral, and alleged only damages for a breach of contract. In the absence of any proof tending to show that the defendants knew that a failure to deliver the property would entail special damages upon the plaintiffs for the demurrage, and in the absence of any claim in the complaint of such special damage, the recovery of this large sum is manifestly unjust and illegal. There is nothing to the contrary in the case of Booth v. Mill Co., 60 N. Y. 487, the only authority cited in the prevailing opinion. It is true there was no denial by the defendants that they knew that the boat was to be held for the purpose of receiving the property, but I know of no rule of law which requires the defendants to deny a fact which is not proved and not pleaded. The evidence of the amount of demurrage was received without objection, but that fact does not prevent this court from doing justice in the case, because the evidence of the defendants' knowledge might have been supplied afterwards by the plaintiffs.

(64 App. Div. 515.)

APATI v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Second Department. October 18, 1901.)

**1. APPEAL—QUESTION FOR REVIEW—PRESENTATION BELOW—WAIVER.**

At the close of plaintiff's evidence, defendant moved to dismiss for want of proof, and, on the court's refusal to rule thereon, introduced evidence, at the close of which he requested the court to dispose of the motion. *Held*, that defendant would not be deemed to have waived his objections by introducing his evidence, and hence the question of whether there was sufficient proof was reviewable on appeal.

**2. MASTER AND SERVANT—PERSONAL INJURIES—PROPER TOOLS—NEGLIGENCE—QUESTION FOR JURY.**

In an action by an employé of a railroad for personal injuries, the evidence as to the defendant's negligence in supplying improper tools for the work consisted of a witness' statement on cross-examination that improved implements were used, to his knowledge, by but two other railroads. Whether the change to improved implements was made on account of their superior safety or on the score of economy did not appear, except by the witness' assertion that all roads which desired to accomplish the work in safety used them. The tools used were apparently in good condition, and were such as had been used for many years in such work. *Held*, that the submission of the question to the jury whether defendant should have supplied such improved implements was error.

Appeal from trial term, Westchester county.

Action by Joseph Apati against the Delaware, Lackawanna & Western Railroad Company. From a judgment in favor of plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Hammond Odell (Hamilton Odell, on the brief), for appellant.
John F. Brennan, for respondent.

WOODWARD, J. On the 17th day of July, 1900, the plaintiff was employed by the defendant's foreman in charge of its work at

Bernardsville, N. J., as a laborer, to fix the ground around the depot. During the employment the plaintiff, with other members of the gang, was called upon to assist in cutting off some rails. In performing this work a chisel made somewhat after the form of an ax, with a handle, was used. The rail to be cut was placed crosswise over another rail, and while the foreman held the chisel by the handle one of the other members of the gang struck the chisel upon the head, and in this way a cut was made all the way around the rail, when it was broken off by letting it fall in such a manner as to receive the strain at the weakest point. The plaintiff on the occasion of one of these cuts being made was directed by the foreman to sit upon the rail at a point near the place of operation, and about two feet from the place where the chisel was in use. While sitting in this position the man who was using the sledge hammer struck the chisel, when a piece from the cutting edge of the tool was broken out, striking the plaintiff in his right eye, destroying the sight. It was testified to by one of the witnesses that two other chisels had been broken just before this accident, and that they had been thrown aside by the foreman.

Upon the trial of the action the defendant moved at the close of plaintiff's case to dismiss the complaint on the ground of a total absence of proof of negligence on the part of the defendant. The learned court announced that it would reserve decision upon the motion, and hear the defense. At the close of all of the evidence, defendant's attorney said:

"I ask your honor to dispose of the motion I made at the close of the plaintiff's case."

The learned court responded:

"I think I will deny it, and send it to the jury on the single question as to the sort of apparatus you used,—as to whether that was negligence. There is nothing on the other branch of the case, because your tools, from outward appearance, seemed to be all right, and I will take that from the jury entirely."

Defendant excepted to this ruling.

In charging the jury the learned court said:

"The law of the case, as I lay it down to you, is that it was the duty of the defendant railroad company, by whom the plaintiff was then employed, to furnish him with a reasonably safe appliance for the doing of the work to which he was put. By that I do not mean to say that the company were to furnish him with the best and latest appliance,—the most modern,—but the ordinary, everyday appliance in general use. Therefore you will inquire and determine as a question of fact from the evidence given in your hearing, and that alone, was this method in use—the hammer and chisel—a reasonably safe way of doing the work, or is there a better way in common, general use, which defendant should have adopted? You will also inquire how general in use is the saw method, about which testimony has been given, as applied to the cutting or separating of rails. How long has that method been in use? If there was in general use a better or safer way than the one used, you will say whether the defendant was negligent in using the chisel method instead of the saw way of cutting rails."

At the close of the charge, defendant's attorney asked the court to charge "that the defendant was not bound to use the hack saw instead of a hammer and chisel, even if the jury are of the opinion

that the hack saw was an improved method of cutting rails." This
the court charged. Defendant's attorney then said:

"I would except then, if your honor please, to the submission by the court
to the jury of the question of the defendant's negligence, claiming that there
is no such question fairly involved. I also except to that part of your hon-
or's charge in which you submit to the jury the question whether there was a
better way of doing the work than the way pursued by the defendant on
the occasion."

To this the court replied:

"I do not mean to limit them. I tried to make myself thoroughly under-
stood. It was not a question of a better way. It was a question whether
the saw was the everyday, accustomed, general way in common use. If
they do not find that to be the fact, then there can be no recovery. De-
fendant's Attorney: I will except, then, to your honor's submission of that
question to the jury, as I claim there is no proof that it is in common or
general use. The Court: That I leave to the jury to determine from the
evidence."

The jury rendered a verdict for the plaintiff for $2,500, and defend-
ant's counsel moved to set aside the verdict and for a new trial upon
all of the grounds mentioned in section 999 of the Code of Civil
Procedure. This motion was subsequently denied, and the appeal
brings up for review the exceptions.

The appellant urges that there was no proof of negligence on the
part of the defendant; therefore the court erred in denying the mo-
tion to dismiss the complaint. The respondent, on the other hand,
insists that, as the defendant introduced evidence after making the
motion to dismiss, the defendant must be deemed to have waived the
point, and that this question cannot be reviewed, citing Jones v. Rail-
way Co., 18 App. Div. 267, 46 N. Y. Supp. 321, where it is said that:

"If, at the close of a plaintiff's case, the defendant is confident that no
cause of action has been made out, the only method of securing a review of
an erroneous ruling on the point is to let the case stand without further
evidence. If the defendant enters upon its evidence, it takes the chances of
supplying the deficiencies of the plaintiff's case."

While it is perhaps true that the defendant, by introducing evi-
dence, takes the chance of supplying the defects in the plaintiff's
case, it is not to be doubted that by a renewal of the motion at the
close of all of the evidence the defendant has the right to a ruling as
to whether there is evidence in the case to go to the jury at that time
(Hopkins v. Clark, 158 N. Y. 299, 304, 53 N. E. 27); and the defend-
ant in the case at bar, not having been able to get a ruling upon his
motion at the close of plaintiff's case, by requesting the court to dis-
pose of his motion at the close of the evidence must be deemed to
have intended a renewal of the motion, and his exception to the
disposition then made of the motion gives him the right to review
here. We are brought, then, to a consideration of the question:
"Was there any evidence of negligence on the part of the defendant?
Was there a question to be submitted to the jury?"

The defendant owed the plaintiff the duty of furnishing him a
reasonably safe place in which to perform his work, and the further
duty of providing him with reasonably safe tools and appliances
for the performance of the labor assigned to him. He is not bound

to provide the best possible machinery or the safest appliances known, but only such as are reasonably safe when used with reasonable care. He is not called upon to procure other devices to secure greater safety, provided those furnished by him are reasonably safe. The test of responsibility is not whether he omitted to do something that he could have done, but whether he was reasonably careful and prudent. Quigley v. Levering, 167 N. Y. 58, 63, 60 N. E. 276, and authorities there cited. For instance, had the plaintiff been employed to work at night, where he would require a light, and if the defendant had furnished him a kerosene lamp, and this had been overturned by a fellow employé, resulting in injury, would any one contend that because electric lights and gaslights were in common, everyday use in the cities of Chicago, Baltimore, and New York, the jury could be allowed to speculate as to the negligence of the defendant in furnishing a kerosene lamp? Yet the learned court submitted to the jury whether the defendant was guilty of negligence because it had furnished a chisel and hammer to cut off rails, while some other kind of a contrivance was used in the cities mentioned to accomplish the same work. There was no evidence, with the possible exception of a gratuitous remark by one of the witnesses that the saw plan had been adopted by "all railroad companies that want to accomplish any work in safety," that the saw plan was safer than the chisel and hammer, or that the railroads using the saw system had been led to make the change on the score of safety. The witness who intruded this remark into his evidence admitted on cross-examination that he knew nothing about any roads, "with the exception of the Third Avenue and Metropolitan," street railroads in the city of New York; and the inference is just as strong that the saw system was adopted because of greater economy in time or greater accuracy and efficiency, as that it was on account of the safety of the process. It is conceded that the tools were such as were ordinarily used, and that they were in good condition, so far as any reasonable inspection would disclose defects, and it was error for the court to submit the question of negligence to the jury upon the proposition that they might determine whether the defendant should have used some other method of cutting off its rails in making repairs in its railroad property. The appliances used on this occasion were of the simplest construction; they were in form such as have been in use from the most remote antiquity, and have been in use for the purpose for which the defendant was using them from the earliest days of iron and steel railway tracks; and the only question of the defendant's negligence, under the circumstances, was whether these tools were reasonably safe for the performance of the work which was to be accomplished. If they were, then there was an end of the case. The defendant is presumed to have done its duty. The burden of proving negligence was upon the plaintiff, and, in the absence of evidence to show that the chisel and hammer were not reasonably safe for the cutting of these rails, there was no case for the jury. It may be that, if the plaintiff had put in evidence showing that the use of a hammer and chisel for this kind of work was unsafe,—that it was so unsafe that it had induced other railroads generally to adopt the saw system,—

the jury might have been warranted in holding that it was negligent on the part of the defendant to insist upon the use of the hammer and chisel, but there is no such evidence in the case. All that can be spelled out of the evidence is that some railroads in some of the cities of the country have used another method, but whether that is due to the greater efficiency and economy of the saw system, or whether it is because they have found the hammer and chisel so dangerous as to demand the change, does not appear, and we are clearly of opinion that it was error to refuse to dismiss the complaint. We are equally clear that the charge of the learned court, while stating the law correctly in the first instance, was erroneous in elaborating and explaining, and that the interests of justice demand a new trial.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.