CHARLES VOGEL, Respondent, *v.* THE AMERICAN BRIDGE COMPANY, Appellant.

*Negligence — when a foreman is the* alter ego *of a corporation.*

Where a corporation engaged in the construction of a bridge appoints a foreman "boss of the job" and the sole superintendent thereof, giving him power to employ and discharge the workmen and placing under his absolute control a supply of ropes for use in the work, such foreman is the *alter ego* of the corporation, and if, after being notified by one of the workmen that a particular rope used in the work is too weak for the purpose, he refuses to furnish a stronger rope, although he has such rope on hand, the corporation is liable for personal injuries sustained by one of its employees in consequence of the breaking of the rope in question.

WOODWARD, J., dissented.

APPEAL by the defendant, The American Bridge Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 10th day of January, 1903, upon the verdict of a jury for $3,000, and also from an order entered in said clerk's office on the 15th day of January, 1903, denying the defendant's motion for a new trial made upon the minutes.

*Frank Verner Johnson,* for the appellant.

*Hector M. Hitchings* [*Lynn W. Thompson* with him on the brief], for the respondent.

JENKS, J.:

This is an action for negligence by servant against master. The servant complains that he was injured by the fall of a metal truss, caused by a break of an inadequate rope lashing. The master, appellant, relies upon errors of law. Its learned counsel asked the court to charge that "if the defendant furnished an abundance of rope reasonably safe and proper for the work, and employed a competent foreman, it is not liable for an error of judgment, if one was committed, upon his part, in the selection of the rope." The court declined to give the charge in that respect any further than it had already charged.

The request was not pertinent. For, on the one hand, the version of the plaintiff is that two fellow-servants of the plaintiff charged with the duty of fastening the rope around the truss, thinking that the rope was too weak, asked McCarty, who was in charge of the work, to furnish a stronger rope, but that McCarty, though he had other ropes at hand, refused, and directed the men to use the rope which thereafter broke. And, on the other hand, the defendant contends that none of these things happened at all; that McCarty was neither asked to select nor selected a rope, but that an abundance of other rope, furnished by it, was then accessible to the men.

The court was also requested to charge: "In the selection of this rope in question the master had no duty to perform other than to provide a proper rope ready for use, and that in the selection of the rope, whether such selection was made by one of the subordinate employees or by the foreman himself, the foreman was simply act-

ing as a co-employee in respect to a detail of the work, and not performing an act of the master for the master." I think the court was justified in its refusal. The proposition of the appellant was based upon the assumption that the foreman was a coemployee, and that there had been a selection of the rope by him. The theory of the plaintiff, as I have said, was radically different, in that he contended that the "foreman" was the *alter ego* of the defendant, and that he (and, consequently, his principal) did not select, but refused to furnish an adequate appliance.

The defendant is a corporation. There was evidence that the foreman was "boss of the job," and the sole superintendent thereof, with power to employ and to discharge, and that acting in such capacity, while in absolute control of many ropes, he refused to furnish any rope but that used. This was evidence sufficient to declare him the *alter ego* of the master. (*Hussey* v. *Coger*, 112 N. Y. 614, 616; *Crispin* v. *Babbitt*, 81 id. 516; Wood Mast. & Serv. [2d ed.] 865.) It was the duty of his principal to furnish reasonably safe and suitable implements for the use of the plaintiff. (*Cullen* v. *Norton*, 126 N. Y. 1, 5.) If, in so doing, the *alter ego* was negligent, then the liability is cast upon his principal. (*Loughlin* v. *State of New York*, 105 N. Y. 159.)

I think that the learned court (SMITH, J.) made no errors in his rulings, and that the judgment and order should be affirmed, with costs.

GOODRICH, P. J., BARTLETT and HOOKER, JJ., concurred; WOODWARD, J., read for reversal.

WOODWARD, J. (dissenting):

I am unable to concur in the conclusion reached by a majority of the court. Conceding the plaintiff's contention, that the accident occurred by reason of the defendant's foreman refusing to permit the use of a stronger and better rope than had been previously employed, I do not think this is sufficient to charge the master with negligence where he has provided, as is conceded in this case, an abundance of proper rope. In the first place, to concede the plaintiff's version is to admit that his fellow-employees had notice of the defect in the rope; it was as obvious to them as to any one, and it was their negligence which was directly the cause of the accident.

Knowing the danger of using a defective rope in work of this character, they had no right to rely upon the direction of the foreman, and it cannot be presumed that the master had delegated to him any power to direct his colaborers to do that which was unlawful, or to unnecessarily expose the men to dangers. The fact that the master had supplied an abundance of good rope raises the presumption that it was intended to be used whenever that became necessary in the carrying on of the work, and the mere fact that a foreman did not think it necessary to change ropes does not impose a liability upon the master for the negligence of the plaintiff's fellow-servants in making use of an improper rope, when a proper one was furnished for their use. If the plaintiff had, himself, made use of the rope, knowing that it was unfit for the use, he could not charge the master with liability, because the risk being known and obvious he would be deemed to have accepted the risk, and it is difficult to understand how the master can be made liable for the known negligence of fellow-employees. Employees are not slaves; they are not called upon to assume unnecessary dangers, even at the direction of a master, and it is only in those cases where the master is presumed to have better knowledge of the situation than his employee, that a direction from him to do an obviously dangerous thing is held to carry liability for results. (*McGovern* v. *Central Vermont R. R. Co.*, 123 N. Y. 280.) In the case of this rope it was, if the plaintiff's version is accepted, obviously unfit for the work to be done; this fact was apparent to the plaintiff's fellow-laborers, and yet they went on using the rope, in disregard of their duty to a fellow-employee, and the master is sought to be charged with the liability because of the alleged refusal of the defendant's foreman to permit the use of a different rope.

The plaintiff seeks to support the judgment upon the theory that the defendant's foreman in charge of the particular job was the *alter ego* of the master, and that his refusal of a proper appliance was the refusal of the master. In support of this contention *Brickner* v. *New York Central R. R. Co.* (2 Lans. 506; affd., 49 N. Y. 672) is largely relied upon by the respondent, and particularly the clause where it is said that " when by appointment of the master, he exercises the executive duties of master, as in the employment of servants, in the selection for adoption of the machinery, apparatus,

tools, structures, appliances and means suitable and proper for the use of other and subordinate servants, then his acts are executive acts, are the acts of a master," etc. There is no doubt that this language expresses the law upon the point under consideration in the *Brickner* case, but it has no bearing upon the facts of this case, for it is not shown that the defendant had vested any such general executive authority in its foreman for this particular work. The evidence shows that the defendant had discharged these duties of employing servants, of selecting the machinery, apparatus, tools, structures, etc., and there is no suggestion that it had been negligent in any of these particulars. It had placed a foreman over the men in the particular work of constructing this bridge, but there is no suggestion that it had delegated or attempted to delegate the power of determining the particular materials which should be used out of those furnished for the purpose, and there is certainly nothing in the case to show that the defendant had authorized its foreman to order or direct that he or his fellow-laborers should be negligent, with a knowledge of the facts before them. The rule is well established that the servant assumes the ordinary risks of the service in which he is engaged, or which he may discover by the use of reasonable care, as well as the risk of injury from the negligence of competent fellow-servants. (*Quigley* v. *Levering*, 167 N. Y. 58, 63, and authorities there cited.) The use of the ropes furnished is not the work of the master, but of a servant, and it may, therefore, be delegated to a competent person without negligence, and the fact that the plaintiff's fellow-servants, under more or less compulsion from another fellow-servant, consented to make use of a rope known to them to be dangerous, where the master had supplied plenty of good rope, cannot make the defendant liable. It was distinctly the negligence of the plaintiff's fellow-servants which caused the accident, under the version of it which was submitted to the jury, and the foreman was not in the discharge of any duty which belonged to the master in whatever directions he may have given in respect to a detail of the work. (*Quigley* v. *Levering, supra,* 65, citing authorities.)

The judgment appealed from should be reversed.

Judgment and order affirmed, with costs.