### VOGEL v. AMERICAN BRIDGE CO.

(Supreme Court, Appellate Division, Second Department.  November 20, 1903.)

1. MASTER AND SERVANT—FOREMAN—FELLOW SERVANTS — APPLIANCES — IN-STRUCTIONS.

Where plaintiff's theory is that his fellow servants, thinking the rope whose breaking afterwards caused an injury was too weak, asked the foreman for a stronger one, which he refused, and the defendant's theory is that none of these things happened, but that an abundance of rope was accessible to the men, a charge that if the defendant company furnished an abundance of safe rope, and a competent foreman, it is not liable for an error in his judgment in the selection of the rope, is not pertinent, and should be refused.

2. SAME—ACT OF FOREMAN—LIABILITY OF CORPORATION.

Where a foreman for a corporation is "boss of the job," and sole superintendent thereof, with power to employ and to discharge, his selection of a rope for men under him is an act of the corporation, for which it is liable.

Woodward, J., dissenting.

Appeal from Trial Term, Queens County.

Action by Charles Vogel against the American Bridge Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HIRSCHBERG, WOODWARD, and JENKS, JJ.

Frank Verner Johnson, for appellant.

Hector M. Hitchings (Lynn W. Thompson, on the brief), for respondent.

JENKS, J. This is an action for negligence by servant against master. The servant complains that he was injured by the fall of a metal truss, caused by a break of an inadequate rope lashing. The master, appellant, relies upon errors of law. Its learned counsel asked the court to charge that "if the defendant furnished an abundance of rope reasonably safe and proper for the work, and employed a competent foreman, it was not liable for an error of judgment on his part, if one was committed, in the selection of the rope." The court declined to give the charge in that respect any further than it had

¶ 2. See Master and Servant, vol. 34, Cent. Dig. §§ 437, 448, 456.

already charged. The request was not pertinent. For, on the one hand, the version of the plaintiff is that two fellow servants of the plaintiff, charged with the duty of fastening the rope around the truss, thinking that the rope was too weak, asked McCarty, who was in charge of the work, to furnish a stronger rope, but that McCarty, though he had other ropes at hand, refused, and directed the men to use the rope which thereafter broke; and, on the other hand, the defendant contends that none of these things happened at all; that he was neither asked to select nor selected a rope, but that an abundance of other rope furnished by it was then accessible to the men.

The court was also requested to charge:

"In the selection of this rope in question, the master had no duty to perform, other than to provide a proper rope ready for use, and that in the selection of the rope, whether such selection was made by one of the subordinate employés or by the foreman himself, the foreman was simply acting as a co-employé in respect to a detail of the work, and not performing an act of the master for the master."

I think the court was justified in its refusal. The proposition of the appellant was based upon the assumption that the foreman was a co-employé, and that there had been a selection of the rope by him. The theory of the plaintiff, as I have said, was radically different, in that he contended that the "foreman" was the alter ego of the defendant, and that he (and consequently his principal) did not select, but refused to furnish, an adequate appliance. The defendant is a corporation. There was evidence that the foreman was "boss of the job," and the sole superintendent thereof, with power to employ and to discharge, and that, acting in such capacity, while in absolute control of many ropes, he refused to furnish any rope but that used. There was evidence sufficient to declare him the alter ego of the master. Hussey v. Coger, 112 N. Y. 614, 616, 20 N. E. 556, 3 L. R. A. 559, 8 Am. St. Rep. 787; Crispin v. Babbitt, 81 N. Y. 515, 37 Am. Rep. 521; Wood on Master & Servant (2d Ed.) p. 865. It was the duty of his principal to furnish reasonably safe and suitable implements for the use of the plaintiff. Cullen v. Norton, 126 N. Y. 1, 5, 26 N. E. 905. If, in so doing, the alter ego was negligent, then the liability is cast upon his principal. Loughlin v. State of New York, 105 N. Y. 159, 11 N. E. 371.

I think that the learned court (Smith, J.) made no errors in his rulings, and that the judgment and order should be affirmed, with costs. All concur, except WOODWARD, J., who dissents.

WOODWARD, J. (dissenting). I am unable to concur in the conclusion reached by a majority of the court. Conceding the plaintiff's contention that the accident occurred by reason of the defendant's foreman refusing to permit the use of a stronger and better rope than had been previously employed, I do not think this is sufficient to charge the master with negligence, where he has provided, as is conceded in this case, an abundance of proper rope. In the first place, to concede the plaintiff's version is to admit that his fellow employés had notice of the defect in the rope. It was as obvious to them as to any one, and it was their negligence which was directly

the cause of the accident.   Knowing the danger of using a defective rope in work of this character, they had no right to rely upon the direction of the foreman; and it cannot be presumed that the master had delegated to him any power to direct his co-laborers to do that which was unlawful, or to unnecessarily expose the men to dangers. The fact that the master had supplied an abundance of good rope raises the presumption that it was intended to be used whenever that became necessary in the carrying on of the work, and the mere fact that a foreman did not think it necessary to change ropes does not impose a liability upon the master for the negligence of the plaintiff's fellow servants in making use of an improper rope, when a proper one was furnished for their use.   If the plaintiff had himself made use of the rope, knowing that it was unfit for the use, he could not charge the master with liability, because, the risk being known and obvious, he would be deemed to have accepted the risk, and it is difficult to understand how the master can be made liable for the known negligence of fellow employés.   Employés are not slaves; they are not called upon to assume unnecessary dangers, even at the direction of a master; and it is only in those cases where the master is presumed to have better knowledge of the situation than his employé that a direction from him to do an obviously dangerous thing is held to carry liability for results.   McGovern v. Central Vermont R. Co., 123 N. Y. 280, 25 N. E. 373.   In the case of this rope it was, if the plaintiff's version is accepted, obviously unfit for the work to be done.   This fact was apparent to the plaintiff's fellow laborers, and yet they went on using the rope, in disregard of their duty to a fellow employé; and the master is sought to be charged with the liability because of the alleged refusal of the defendant's foreman to permit of the use of a different rope.

The plaintiff seeks to support the judgment upon the theory that the defendant's foreman in charge of the particular job was the alter ego of the master, and that his refusal of a proper appliance was the refusal of the master.   In support of this contention, Brickner v. New York Central R. Co., 2 Lans. 506, affirmed in 49 N. Y. 672, is largely relied upon by the respondent, and particularly the clause where it is said that:

"When, by appointment of the master, he exercises the executive duties of master, as in the employment of servants, in the selection for adoption of the machinery, apparatus, tools, structures, appliances, and means suitable and proper for the use of other and subordinate servants, then his acts are executive acts—are the acts of a master," etc.

There is no doubt that this language expresses the law upon the point under consideration in the Brickner Case, but it has no bearing upon the facts of this· case, for it is not shown that the defendant had vested any such general executive authority in its foreman for this particular work.   The evidence shows that the defendant had discharged these duties of employing servants, of selecting the machinery, apparatus, tools, structures, etc., and there is no suggestion that it had been negligent in any of these particulars.   It had placed a foreman over the men in the particular work of constructing this bridge, but there is no suggestion that it had delegated or attempted

to delegate the power of determining the particular materials which should be used out of those furnished for the purpose; and there is certainly nothing in the case to show that the defendant had authorized its foreman to order or direct that he or his fellow laborers should be negligent, with a knowledge of the facts before them. The rule is well established that the servant assumes the ordinary risks of the service in which he is engaged, or which he may discover by the use of reasonable care, as well as the risk of injury from the negligence of competent fellow servants. Quigley v. Levering, 167 N. Y. 58, 64, 60 N. E. 276, 54 L. R. A. 62, and authorities there cited. The use of the ropes furnished is not the work of the master, but of a servant, and it may therefore be delegated to a competent person without negligence; and the fact that the plaintiff's fellow servants, under more or less compulsion from another fellow servant, consented to make use of a rope known to them to be dangerous, where the master had supplied plenty of good rope, cannot make the defendant liable. It was distinctly the negligence of the plaintiff's fellow servants which caused the accident, under the version of it which was submitted to the jury, and the foreman was not in the discharge of any duty which belonged to the master in whatever directions he may have given in respect to a detail of the work. Quigley v. Levering, 167 N. Y. 65, 60 N. E. 276, 54 L. R. A. 62, citing authorities.

The judgment appealed from should be reversed.