# Cases

SAMUEL VYKESS, Appellant, v. THE DUNCAN COMPANY, Respondent.

*Negligence — injury in the " drainer " of a pulp paper mill — duty of an employee injured to guard himself without special instructions as to the danger.*

In an action to recover damages for personal injuries sustained by the plaintiff while employed in the defendant's paper mill, it appeared that in the course of the manufacture of the paper, pulp in liquid form was piped into an appliance called a "drainer." This "drainer" was a brick structure twenty-six feet long, eight feet wide and ten feet one inch deep. It was provided with a perforated bottom in order to allow the water to pass from the pulp. At the end of the "drainer," two feet from the bottom thereof, was a water-tight door, and when the defendant's employees desired to remove the pulp, they would open this door and after shoveling away a sufficient quantity of the pulp, would enter the "drainer," the interior of which was lighted by electricity, and complete the work of shoveling from the inside.

On the night of the accident, the plaintiff and another person were inside the drainer engaged in removing the pulp. While so engaged a mass of pulp at the rear end of the "drainer," from eight to ten feet high and from three to five feet thick, fell upon the plaintiff and injured him.

The plaintiff had never before been engaged in this particular branch of the work and had received no instructions as to the danger of the mass of pulp falling. He had, however, had experience in shoveling the pulp after it had been removed from the drainer.

*Held*, that the trial judge properly dismissed the plaintiff's complaint;

That the plaintiff, having knowledge of the nature of the pulp, must have known its liability to slip and fall, and that it was incumbent upon him, without receiving special instructions to that effect, to guard himself against its falling.

APPEAL by the plaintiff, Samuel Vykess, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Saratoga on the 24th day of October, 1902, upon the dismissal of the complaint by direction of the court after a trial at the Saratoga Trial Term, and also (as stated in the notice of appeal) from an order entered in said clerk's office on the 24th day of October, 1902, directing the dismissal of the complaint.

Plaintiff was employed as an extra man in the mills of the defendant company, which is engaged in the manufacture of paper. Plaintiff, who had never before been engaged in this particular part of the mill, was directed by the night foreman to go into what was known as the " drainer " and shovel pulp. This drainer and its use may be described briefly as follows : It is about twenty-six feet long, eight feet wide, and ten feet one inch deep, constructed of brick walls. It is provided with a false perforated bottom, two inches above the solid bottom, to allow the water to drain out. This drainer is filled with the pulp in liquid form from a pipe overhead. The water drains away, the pulp settles and the drainer is again filled. It is then allowed to stand for twenty-four hours, by which time it settles considerably. At the front end of the drainer, about two feet from the bottom, is a water-tight door, two feet six inches wide and three feet six inches high. After the pulp is drained this door is opened and the men commence to remove the stock, shoveling it out and placing it in a moving conveyer. As soon as there is sufficient pulp removed the men enter the drainer through the door and work thereafter from the inside, shoveling the pulp through the door into the conveyer. The interior of the drainer is lighted by electricity.

The plaintiff, in company with one Guynup, were inside the drainer at the time of the accident engaged in this shoveling process. They had removed all the pulp near the door, while at the rear of the drainer there still remained a mass of pulp from eight to ten feet high and from three to five feet thick. While the plaintiff was engaged in shoveling this mass of pulp fell upon him, causing the injuries, to recover damages for which he has brought this action. There had been no instructions given him as to the danger of this mass falling. Upon the trial, after hearing all the evidence, the

trial court directed a dismissal of the complaint, and from the judgment entered upon this direction this appeal is taken. Further facts appear in the opinion.

*John Scanlon,* for the appellant.

*Edward W. Douglas,* for the respondent.

SMITH, J. :

We are of opinion that the trial court correctly held that such risk as was attendant upon the plaintiff's work at the time he was injured was one which would be apparent to a man of ordinary intelligence, and one, therefore, which the plaintiff assumed. He was familiar with the nature of the product which he was handling. He had been shoveling this same pulp in this same condition after it reached the beater room, so called, to which place it was taken when it was removed from the drainers. The task to which he was assigned was that of removing the mass itself from the drainer to the conveyer which was to carry it off. The extreme height of the drainer was only ten feet and one inch, and the evidence is to the effect that by reason of the drainage the mass was lowered considerably, so the mass itself could not have been ten feet high. If a workman were directed to dig clay from a clay bank or sand from a sand bank, it would seem superfluous to warn him that the clay or sand above, which was not fully supported, might fall. With full knowledge of the nature of the product with which he was dealing, he must have known its liability to slip and fall, against which liability a man of reasonable prudence would be expected to guard himself without special instructions. The defendant could only be held liable for failing to give such instructions upon the basis that he had children to work for him and not men of mature age. The drainer was lighted by electric lights which showed the side of the wall of pulp from the top to the bottom. Reasonable caution would have required the plaintiff at least to test the wall of pulp which remained to see whether it was solid or unsteady and liable to fall while he was working under it. We are unable to find any want of reasonable care on the part of the defendant upon which its liability for this accident could be based, and the failure of the plaintiff to protect himself against such dangers as were apparent to him

constituted such a want of care on his part as to defeat any liability which might otherwise exist.

It is unnecessary to examine all of the cases cited by the appellant in support of this appeal. The case upon which he relies as most nearly akin to the case at bar is the case of *McGovern* v. *C. V. R. Co.* (123 N. Y. 280). In that case a workman, with no knowledge of the danger in which he was placed, was forced to go into the lower part of a grain bin fifty feet in height, to the sides of which the grain stuck when heated. The grain bin was dark, so that the amount of grain remaining in the bin could not be ascertained except by inspection from the top. While in there, in performance of his duties, a large amount of grain, the extent of which it was held should have been known to the defendant, fell down upon the plaintiff's intestate, causing his death. It was there held that because the danger could not have been known to the workman, and should have been known to the defendant, that the defendant had violated its duty in respect to its obligation to furnish a safe place to work. Chief Judge RUGER, in writing for the court, says that the case was not entirely free from doubt. Here the extent of the danger was easily ascertainable by ordinary prudence. The element of concealed danger is here absent, so that the case cited is no authority for the appellant's position. In fact, in all of the cases cited by the appellant, where the injury happened by reason of the falling of a mass which the workman was engaged himself in removing, there was some element of danger which could not be ascertained by the workman by the exercise of a reasonable prudence and inspection. Those cases in which the accident happened by reason of the falling of some material, other than that which the workman was engaged in removing, come within an entirely different principle, and are in no way parallel to the case at bar.

Nor is the situation changed by the evidence as to the vibrations of the building. There was machinery working upon the floor above, but these drainers were constructed of brick walls placed upon concrete foundation, and were in no way attached to that part of the building which contained the machinery. There is no evidence from which a jury would be authorized to find that any disturbance by reason of the action of the machinery caused this pulp to fall, or that it fell from any other than a natural cause. That part of the

pulp which had fallen before was constantly being taken away from next to this so-called wall of pulp, the support of the wall was being weakened with the natural result — the fall of the wall itself.

The judgment should, therefore, be affirmed.

Judgment and order unanimously affirmed, with costs. HOUGHTON, J., not sitting.