## VYKESS v. DUNCAN CO.

(Supreme Court, Appellate Division, Third Department. November 11, 1903.)

1. INJURIES TO SERVANT—ASSUMPTION OF RISK.

    A person familiar with the nature of pulp, who is employed to shovel a mass of pulp about 10 feet in height from a drainer, assumes the risk of its slipping and falling down and injuring him.

2. SAME—NEGLIGENCE—EVIDENCE.

    Where drainers in a paper mill were constructed of brick walls placed on concrete foundation, and were in no way attached to that part of the building containing machinery, the jury could not find that the vibration caused by the machinery made a mass of pulp in a drainer fall.

Appeal from Trial Term, Saratoga County.

Action by Samuel Vykess against the Duncan Company. From a judgment dismissing the complaint and rendering judgment for defendant for costs, and from an order dismissing the complaint, with costs, plaintiff appeals. Affirmed.

Plaintiff was employed as an extra man in the mills of the defendant company, which is engaged in the manufacture of paper. Plaintiff, who had never before been engaged in this particular part of the mill, was directed by the night foreman to go into what was known as the "drainer" and shovel pulp. This drainer and its use may be described briefly as follows: It is about 26 feet long, 8 feet wide, and 10 feet 1 inch deep, constructed of brick walls. It is provided with a false perforated bottom 2 inches above the solid bottom, to allow the water to drain out. This drainer is filled with the pulp

in liquid form from a pipe overhead. The water drains away, the pulp settles, and the drainer is again filled. It is then allowed to stand for 24 hours, by which time it settles considerably. At the front end of the drainer, about 2 feet from the bottom, is a water-tight door, 2 feet 6 inches wide and 3 feet 6 inches high. After the pulp is drained, this door is opened, and the men commence to remove the stock, shoveling it out and placing it into a moving conveyor. As soon as there is sufficient pulp removed, the men enter the drainer through the door, and work thereafter from the inside, shoveling the pulp through the door into the conveyor. The interior of the drainer is lighted by electricity.

The plaintiff, in company with one Guynup, were inside the drainer at the time of the accident, engaged in this shoveling process. They had removed all the pulp near the door, while at the rear of the drainer there still remained a mass of pulp from 8 to 10 feet high and from 3 to 5 feet thick. While the plaintiff was engaged in shoveling, this mass of pulp fell upon him, causing the injuries to recover damages for which he has brought this action. There had been no instructions given him as to the danger of this mass falling. Upon the trial, after hearing all the evidence, the trial court directed a dismissal of the complaint, and from the judgment entered upon this direction this appeal is taken. Further facts appear in the opinion.

Argued before PARKER, P. J., and SMITH, CHASE, and CHESTER, JJ.

John Scanlon, for appellant.
Edward W. Douglas, for respondent.

SMITH, J. We are of opinion that the trial court correctly held that such risk as was attendant upon the plaintiff's work at the time he was injured was one which would be apparent to a man of ordinary intelligence, and one, therefore, which the plaintiff assumed. He was familiar with the nature of the product which he was handling. He had been shoveling this same pulp in this same condition after it reached the "beater room," so called, to which place it was taken when it was removed from the drainers. The task to which he was assigned was that of removing the mass itself from the drainer to the conveyor which was to carry it off. The extreme height of the drainer was only 10 feet and 1 inch, and the evidence is to the effect that by reason of the drainage the mass was lowered considerably, so the mass itself could not have been 10 feet high. If a workman were directed to dig clay from a clay bank or sand from a sand bank, it would seem superfluous to warn him that the clay or sand above which was not fully supported might fall. With full knowledge of the nature of the product with which he was dealing, he must have known its liability to slip and fall, against which liability a man of reasonable prudence would be expected to guard himself without special instructions. The defendant could only be held liable for failing to give such instructions upon the basis that he had children to work for him, and not men of mature age. The drainer was lighted by electric lights, which showed the side of the wall of pulp from the top to the bottom. Reasonable caution would have required the plaintiff at least to test the wall of pulp which remained to see whether it was solid or unsteady, and liable to fall while he was working under it. We are unable to find any want of reasonable care on the part of the defendant upon which its liability for this accident could be based, and the failure of the plaintiff to protect himself against such

dangers as were apparent to him constituted such a want of care on his part as to defeat any liability which might otherwise exist.

It is unnecessary to examine all of the cases cited by the appellant in support of this appeal. The case upon which he relies as most nearly akin to the case at bar is the case of McGovern v. C. V. R. R. Co., 123 N. Y. 280, 25 N. E. 373. In that case a workman, with no knowledge of the danger in which he was placed, was forced to go into the lower part of a grain bin 50 feet in height, to the sides of which the grain stuck when heated. The grain bin was dark, so the amount of grain remaining in the bin could not be ascertained except by inspection from the top. While in there in performance of his duties, a large amount of grain, the extent of which it was held should have been known to the defendant, fell down upon the plaintiff's intestate, causing his death. It was there held that because the danger could not have been known to the workman, and should have been known to the defendant, the defendant had violated its duty in its obligation to furnish a safe place to work. Judge Ruger, in writing for the court, says that the case was not entirely free from doubt. Here the extent of the danger was easily ascertainable by ordinary prudence. The element of concealed danger is here absent, so that the case cited is no authority for the appellant's position. In fact, in all of the cases cited by the appellant, where the injury happened by reason of the falling of a mass which the workman was engaged himself in removing, there was some element of danger which could not be ascertained by the workman by the exercise of a reasonable prudence and inspection. Those cases in which the accident happened by reason of the falling of some material other than that which the workman was engaged in removing come within an entirely different principle, and are in no way parallel to the case at bar.

Nor is the situation changed by the evidence as to the vibrations of the building. There was machinery working upon the floor above, but these drainers were constructed of brick walls placed upon concrete foundation, and were in no way attached to that part of the building which contained the machinery. There is no evidence from which a jury would be authorized to find that any disturbance by reason of the action of the machinery caused this pulp to fall, or that it fell from any other than a natural cause. That part of the pulp which had fallen before was constantly being taken away from next to this so-called wall of pulp, the support of the wall was being weakened, with the natural result—the fall of the wall itself.

The judgment should therefore be affirmed.

Judgment and order affirmed, with costs. All concur.