SCHERMERHORN v. GLENS FALLS PORTLAND CEMENT CO.

(Supreme Court, Appellate Division, Third Department.  May 4, 1904.)

1. INJURY TO EMPLOYÉ—NOTICE TO MASTER—COMMON-LAW LIABILITY.

The provision of Laws 1902, p. 1749, c. 600, § 2, requiring notice to be given an employer of injury to an employé, applies only to a case of liability created by the statute, and not where the injury is from failure to furnish a safe place to work, liability for which is a common-law one.

2. SAME—ASSUMPTION OF RISK—EVIDENCE.

Plaintiff, employed at a lime kiln, around which were four iron bands, was injured by one of them, which broke from the sheering off of the rivets, caused by the expansion of the kiln under the heat.  A band had broken several months before, and plaintiff had told the foreman that

¶ 1. See Master and Servant, vol. 34, Cent. Dig. § 806.

they must be loosened, or he would cease work, and the foreman had said he would see that it was attended to at once. The superintendent also said he would have them loosened, and as soon as he got material would have guards put up, and four uprights were thereafter erected as guards to prevent a band flying out in case of a break. While the bands were not loosened, plaintiff testified that he did not know it, and supposed that when they said they would loosen them that they did it, and that from where he worked one could not see whether they had been loosened. *Held*, that it could not be said as matter of law that the risk was an obvious one and assumed.

Appeal from Trial Term, Washington County.

Action by John I. Schermerhorn against the Glens Falls Portland Cement Company. From a judgment for defendant on a nonsuit granted at the close of plaintiff's proofs on a trial before the court and a jury, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

T. F. Hamilton, for appellant.
Edward M. Angell, for respondent.

CHESTER, J. The learned trial justice put the dismissal of the complaint upon two grounds: First, that the plaintiff had not given the notice to his employer required by section 2, c. 600, p. 1749, Laws 1902, within 120 days, stating the time, place, and cause of the injuries he received; and, second, that under the facts as proven the plaintiff assumed the risks in doing what he did at the time he was injured.

With respect to the first ground it may be said that since the trial the Court of Appeals has held that chapter 600, p. 1748, Laws 1902, did not apply to a case where, as here, the complaint does not charge any liability based upon the provisions of that statute, but only applies to any new or extended liability created thereby. Gmaehle, as Adm'r, etc., v. Rosenburg, 178 N. Y. 147, 70 N. E. 411. Here the negligence charged in the complaint is "that the defendant did not furnish the plaintiff a reasonably safe place to work," and the facts are alleged upon which that conclusion is predicated. As was said in the case cited:

"It was the settled law of this state prior to the enactment of the statute that the master was bound to exercise reasonable care to provide the servant a safe place to work and safe and suitable machinery and appliances with which to work, and that for a failure to exercise such a degree of care he was liable to the servant for any injury caused thereby. This was what our courts and the courts generally throughout the country have held to be the common-law liability of the master."

The complaint here having alleged a good cause of action under the common law, and one, therefore, not created by the act of 1902, the complaint should not have been dismissed for failure to allege and prove that the notice required by that act was given.

We think also the court was in error in dismissing the complaint on the other ground mentioned. The plaintiff was employed as a cement burner by the defendant. In its mill where he worked there were 10 kilns for burning cement. These were built of brick, and were each about 65 feet in circumference and about 90 feet high, running through

four stories of the mill.    The method of burning was as follows: The material from which the cement was made was put in the kilns near the top on the fourth floor.    The coal was fed into the kilns on the third floor.    On the second floor there were four doors on opposite sides of the kilns, through which, when opened, long rods were inserted to poke the cement down.    On the first floor the burned product was drawn from the kilns.    The plaintiff's work was in poking down the cement with a long rod at one of the kilns on the second floor.    On that floor there were four iron bands around the kiln at which plaintiff worked, each being six inches in width and one-half inch thick; one being near the floor, one near the ceiling, and two others between. The ends of these bands were butted and riveted together.    The heat was intense about the kilns, and the men had to strip and wash frequently to keep their flesh from becoming sore and chafed.    Pails were provided by the defendant for this purpose at each of the kilns.    The kiln at which plaintiff worked had just been drawn, plaintiff had washed himself, and was in the act of setting his pail down near the kiln, in its customary place, when one of the bands, which was about 8 or 10 feet high, and which weighed about 400 pounds, broke by the sheering off of the rivets that fastened it together, and fell, striking the plaintiff upon his head as he was in a stooping position, and severely injuring him.    The break was caused by the expansion of the kiln under the intense heat to which it was subjected.    Another of these bands had broken several months before, and in falling broke an employé's leg. After this the plaintiff told the foreman of the burners that the band was wrong, and, if it was not loosened, he would not work there; and the foreman replied "that he would see that it was attended to at once."    The matter was also called to the attention of the superintendent by a committee of the men, and he suggested that it could be made safer by loosening the bands, and said that he would have them loosened, and, as soon as they got material, he would have something put up as a guard.    After this, and before plaintiff was injured, four lateral iron guards running from the floor to the ceiling outside and crossing the bands on four sides of the kiln were put up.    These were intended to prevent a band from flying out from the kiln in case it should break.

While it is the rule that a servant assumes all the risks usually incident to his employment, yet that rule is based on the supposition that the master has exercised reasonable care in providing the servant a safe place in which to work, and it is those risks only which cannot be obviated by the exercise of such care by the master that the servant assumes.    Pantzar v. Tilly Foster Iron Co., 99 N. Y. 368, 2 N. E. 24. Known dangers which can be avoided by the exercise of reasonable care by the master are not such as are incident to the business.    Mc-Govern v. Central Vermont R. R. Co., 123 N. Y. 280, 287, 25 N. E. 373.    The court, in holding that the plaintiff assumed the risks, put its ruling in this respect on the ground that the plaintiff knew the cause of the danger equally with the defendant; or, in other words, that it was an obvious risk.    If that was so, the ruling was undoubtedly right; but the plaintiff was entitled, on a motion to dismiss the

complaint at the close of his case, to the most favorable view of the evidence that could be taken, and we must apply that principle in reviewing the ruling. When the danger was pointed out to the foreman and the superintendent, the plaintiff was assured that the bands would be loosened at once. While the lateral guards were put on after that, these would not prevent the bands from breaking by the expansion of the kilns, but the loosening of the bands would. It is a fair inference from the evidence that the plaintiff assumed that the foreman or superintendent had loosened them, as they said they would; and, if they had done so, the accident would not have happened. More than this, the rivets sheered off and the band parted on the opposite side of the kiln from where the plaintiff was standing. He testified:

"I did not know that the band had not been loosened. I supposed that when he said he would do a thing he done it. I could not see, from where I stood and worked, whether it had been loosened or not. No man could, because the dust was so settled around there between the draws that it would cover everything up. There was much dust. At the time of the draws there was dust, smoke, and gas."

With this evidence in the case, we think the court should not have held, as a matter of law, that the risk was an obvious one, but that a question of fact was presented, which should have been submitted to the jury. We think, also, that there was enough evidence to require the submission of the questions of defendant's negligence and of plaintiff's freedom from contributory negligence to the jury, and therefore that the complaint should not have been dismissed.

Judgment reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.