claim is for a balance due on the contract price and for the sum agreed upon orally for extra work. The defendant makes general denial, save as to the execution of the written contract, alleges nonperformance, and interposes a counterclaim.

The written contract required the plaintiffs "to make, complete, and finish all of the brick mason works" in and about 19 brick buildings in accordance with certain plans and specifications. It is not necessary, in the view I take of this case, to consider the defense of nonperformance. The defendant did not dispute that the plaintiffs did extra work; but he contends that the parties agreed that such work should be set off against the withdrawal of certain work from the written contract, in that the defendant would cause certain steps to be built of concrete or cement, instead of brick, and by the general contractor. There is no question that the steps were so built. The plaintiffs denied that such agreement was ever made, and asserted that such work was not within his contract. The defendant was corroborated as to the said agreement by the testimony of the general contractor. It was important to ascertain whether the said work was within or without the written contract. The evidence is vague and unsatisfactory, and it certainly did not justify the conclusion that the work was outside of that contract. The plans were before the court; but, unexplained, they did not determine this question. When it appeared that the question was still in doubt, the defendant asked to recall the architect; but permission was refused. Upon the evidence adduced I think that the court was not justified in disregarding this contention of the defendant. This, then, is not a case when the evidence was exhausted, but rather when testimony which naturally would shed much light on a vital point was not elicited. The record does not show that the defendant closed his case, but that the court stopped him, and said that it did not wish to hear any more; that it would give judgment, in that the "overshadowing fact" was that the defendant offered to pay the plaintiffs for his claim by giving a note. Of course, that was an important bit of testimony; but the defendant denied that he did so, and plaintiffs did not corroborate this testimony by calling any other witness, although one of the plaintiffs volunteered that his partner and some of the workmen were present when the defendant made this offer. It seems to be virtually conceded that in any event only a personal judgment could be recorded.

I advise the reversal of the judgment and the granting of a new trial; costs to abide the final award of costs. All concur.

---

### FLANAGAN v. F. W. CARLIN CONST. CO.

(Supreme Court, Appellate Division, Second Department.   October 12, 1909.)

1. MASTER AND SERVANT (§ 252*)—INJURY TO SERVANT—EMPLOYER'S LIABILITY ACT—NOTICE.

A notice under the employer's liability act (Laws 1902, p. 1748, c. 600) of injury to an employé, not stating the specific place where he was when injured or the negligence causing the injury, but stating the place as "at

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or in the vicinity of the M. terminal of the W. bridge" and the cause "through being struck by a block of wood through your negligence and that of your superintendents and agents, and the negligent and defective condition of the ways, works, and machinery used in said work," was insufficient to allow the employé the benefit of such act, in an action for the injury based on the theory that the particular place where he was working and injured was unsafe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

**2. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—LABOR LAW—"STRUCTURE."**

The lowering of tracks of elevated and trolley roads on the terminal of a bridge is within the labor law (Laws 1897, p. 461, c. 415), requiring the use of safe and suitable mechanical contrivances, so constructed, placed, and operated as to give proper protection to one employed in performing labor in the repairing or altering of a "structure."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 199; Dec. Dig. § 107.*

For other definitions, see Words and Phrases, vol. 7, pp. 6700–6702; vol. 8, p. 7806.]

**3. MASTER AND SERVANT (§ 258*)—INJURY TO SERVANT—LABOR LAW—PLEADING.**

The labor law (Laws 1897, p. 461, c. 415), requiring the use of safe and suitable mechanical contrivances, so constructed, placed, and operated as to give proper protection to one employed in performing labor in the repairing or altering of a structure, need not be specially pleaded, to be availed of in an action by an employé for injuries.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 822; Dec. Dig. § 258.*]

**4. MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT—SAFE PLACE TO WORK—NEGLIGENCE—EVIDENCE.**

Evidence, in an action for injury to an employé in the lowering of the tracks of elevated and trolley roads by being struck by a block of wood falling from the structure while he was getting materials from the store yard established under the structure by the employer, *held* sufficient to go to the jury on the question of the store yard being a dangerous and unsafe place to work, because of the manner in which the master was doing the work on the structure over it, in neglect of the provision of the labor law as to using appliances to protect employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010, 1032; Dec. Dig. § 286.*]

**5. MASTER AND SERVANT (§ 136*)—INJURY TO SERVANT—DANGEROUS METHOD OF WORK—NOTICE.**

An employer is charged with notice of the dangerous method it is using in altering a structure, in violation of the provision of the labor law (Laws 1897, p. 461, c. 415) that it shall use appliances to give proper protection to employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 272; Dec. Dig. § 136.*]

**6. MASTER AND SERVANT (§ 286*) — INJURY TO SERVANT — NEGLIGENCE — EVIDENCE.**

Failure of an employer to use methods usual and customary in the city of protecting, in the lowering of a structure, workmen from the material falling from higher places, where other employés were working, is evidence of negligence to take the case to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1032, 1033; Dec. Dig. § 286.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. MASTER AND SERVANT (§ 201*)—INJURY TO SERVANT—NEGLIGENCE OF MASTER AND FELLOW SERVANT.

That a fellow servant put a block of wood in motion on a structure which was being altered, causing it to fall on an employé below, did not relieve the employer of liability for its failure to provide a safe place for its servants in which to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 518; Dec. Dig. § 201.*]

8. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—SAFE PLACE TO WORK.

The duty of a master is to furnish a safe place to work, and not merely to furnish a place reasonably safe in its natural condition, without liability for its becoming dangerous only as the work progresses.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 200; Dec. Dig. § 107.*]

9. MASTER AND SERVANT (§ 276*)—INJURY TO SERVANT—CAUSE OF ACCIDENT—EVIDENCE.

Evidence that defendant was a contractor for the lowering of tracks of elevated roads, that no work was being done on the structure over the place where plaintiff, an employé, was injured by the fall of a piece of wood, except by defendant's servants, and that there was no travel over that part of the structure, is sufficient to warrant a finding that defendant caused the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 970; Dec. Dig. § 276.*]

Appeal from Trial Term, Queens County.

Action by William Flanagan against the F. W. Carlin Construction Company for personal injuries received by plaintiff while in defendant's employ. From a judgment for defendant, on dismissal of the complaint at the close of plaintiff's case, plaintiff appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, RICH, and MILLER, JJ.

Don R. Almy (William E. Weaver, on the brief), for appellant.
F. Sidney Williams, for respondent.

RICH, J.    The notice offered in evidence under the employer's liability act was properly excluded, for the reason that it fails to state the specific place where plaintiff was injured and the negligence of the defendant from which the injury arose.    The defendant at the time of the injury was engaged in lowering the tracks of the elevated and trolley roads at the Manhattan terminal of the Williamsburgh Bridge, and its employés were at work on the entire structure.    The injury occurred through the unexplained fall of a block of wood from the upper part of the bridge under which plaintiff was at work.    The notice states the place as "at or in the vicinity of the Manhattan terminal of the Williamsburgh Bridge," and the cause "through being struck by a block of wood through your negligence and that of your superintendents and agents and the negligent and defective condition of the ways, works, and machinery used in said work."    As the action was to recover on the theory that the particular place where plaintiff was working and injured was unsafe, the defendant was entitled to be apprised of the specific location of that place, and to have the negli-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

gence from which the injury resulted pointed out. The notice failed
to give such information, and the plaintiff could not avail himself upon
the trial of the benefits of the employer's liability act. Miller v. Sol-
vay Process Co., 109 App. Div. 135, 95 N. Y. Supp. 1020; Ortolano
v. Degnon Contracting Co., 120 App. Div. 59, 104 N. Y. Supp. 1064;
Kennedy v. N. Y. Telephone Co., 125 App. Div. 846, 110 N. Y. Supp.
887; Finnigan v. N. Y. Contracting Co., 194 N. Y. 244, 87 N. E. 424.

The complaint, however—eliminating its averments as to the service
of such notice—sets forth a common-law cause of action, as well as
one for a violation of the provisions of the labor law requiring the use
of safe, suitable, and proper mechanical contrivances, "so constructed,
placed and operated as to give proper protection to the life and limb
of a person" employed or engaged in performing labor in the repairing
or altering of a "structure." That statute applies to the class of work
the defendant was engaged in doing (Flannigan v. Ryan, 89 App. Div.
624, 85 N. Y. Supp. 947; Wingert v. Krakauer, 76 App. Div. 34, 78
N. Y. Supp. 664), and operates to plaintiff's benefit (Caddy v. Interbor-
ough Rapid Transit Co., 125 App. Div. 681, 110 N. Y. Supp. 162);
and it is not necessary to plead the statute specially to have it apply
(Haggblad v. Brooklyn Heights R. R. Co., 117 App. Div. 838, 102
N. Y. Supp. 1039; Riley v. McNulty, 115 App. Div. 650, 100 N. Y.
Supp. 985).

The plaintiff was an iron worker, and working as a riveter on the
Manhattan terminal of the Williamsburgh Bridge, which at that point
is 45 or 50 feet from the ground; the space under it being open. The
terminal extended east and west, and several north and south streets
passed under it, between two of which—Pitt and Willet streets—
the accident occurred. The defendant was doing the entire work of
lowering the tracks crossing the bridge and connecting them with the
subway. The bridge had five traffic zones. On the extreme south was
a roadway for teams, next to that two trolley tracks of the Brooklyn
Heights Railroad Company, next two tracks for elevated trains; next
two tracks over which the cars of the Metropolitan Company were
operated, and next—on the extreme north side—was another roadway
for teams. The work which defendant was doing at the time of the
accident was in the second and third of these zones, and consisted of
lowering the tracks of the elevated and Brooklyn Heights trolley roads.
The open space below these four tracks, between Pitt and Willet
streets, was used by defendant as a store yard for the material used in
its work, as well as a working place for some of its workmen engaged
in preparing materials for use. Witnesses testified that:

"All kinds of material, old iron, new iron, rivets, bolts, anything that we
needed for the structure, was laid in there."

The work had been commenced at the anchorage, and continued
westwardly towards the subway. At the time of the accident the gang
of riveters, of which plaintiff was a member, had finished their work
over this storage yard, and moved their staging and appliances some
distance west of it, after which plaintiff went to the storage yard for
rivets, and, while there, was struck on the head by a block of wood,
which fell from the upper structure, directly over the place where the

materials were kept, and where some of defendant's employés were working on the tracks of the elevated road in the third traffic zone of the bridge. Loose pieces of wood of all descriptions, bolts, plates, angles, spikes, and similar materials, were laying on the bridge where these men were working. There was no cover or protection of any kind between the place where they were working and the storage yard under it, where plaintiff was at the time of the accident, to protect employés who worked in the yard, or who went there for materials, from injury by objects falling from the upper part of the structure, and it appeared that prior to the accident men working in the yard had seen materials fall from the upper part of the structure.

An engineer with 29 years experience testified that there was a common and general custom or practice in the city of New York, where men were at work beneath other men, whose work was carried on on a bridge or elevated structure, to protect the lower workmen by either stretching a canvas or building a temporary staging, planked over. He says the usual custom in cases of bridges or subway work was to put up a canvas that would protect the men working underneath, by forming a covering, so that anything falling from above would fall into or upon the canvas, and that this was the common custom and practice when the structure was over private property, as well as when it was over public streets; that he never saw the kind of work which defendant was doing done when canvas was not so used. The defendant had observed this custom when its work was over public streets.

The plaintiff is entitled to the most favorable inferences reasonably deducible from the testimony; and, his complaint having been dismissed on the evidence produced by him, the testimony given by his witnesses must be assumed to be true. The jury might have found that the defendant established the store yard for the purpose of keeping material to be used on the work in the ground space directly beneath the tracks of the elevated road on which it had other employés at work; that upon the upper structure, at the place where such men were working, was loose material, including blocks of wood similar to the one which fell and struck the plaintiff; that prior to the accident workmen had seen objects fall from the upper structure into the storage yard; that defendant was aware that the work being done on the bridge created danger from falling articles; and that plaintiff, in going to the storage yard for rivets to use in his work, was using the yard in the manner in which defendant intended it should be used by its workmen. In other words, the jury would have been warranted in finding from this evidence that the storage yard was made a dangerous and unsafe place in which to work because of the manner in which the defendant was conducting the work on the bridge over it, and that it knew or should have known this fact. If it was necessary for the plaintiff to establish notice of the dangerous method it was using in the work of altering this structure, I think it was established, in view of the violation of the provisions of the labor law. Johnson v. Onondaga Paper Co., 112 App. Div. 667, 98 N. Y. Supp. 602.

The evidence that there were usual and customary methods in use in New York City for protecting the lower workmen upon bridges and elevated structures from injury by materials falling from higher places

where other employés were at work brings the case within the rule that the failure of an employer to use ordinary and customary methods is of itself some evidence of negligence, requiring the submission of the question to the jury (Schmit v. Gillen, 41 App. Div. 302, 58 N. Y. Supp. 458; Cosselmon v. Dunfee, 59 App. Div. 467, 69 N. Y. Supp. 271); and where the master's failure to use common and ordinary methods and appliances in his work subjects the servant to unnecessary danger there is culpable negligence (Rickhoff v. Hackman, 54 Hun, 637, 7 N. Y. Supp. 471). Even if, as suggested, the negligence of a fellow servant might have put the block of wood in motion, causing it to fall, this would not relieve the defendant of its own dereliction of duty in failing to provide a safe place for its servants to work in. Hazzard v. State, 108 App. Div. 119, 95 N. Y. Supp. 1103.

The evidence from which the jury would have been justified in finding that the defendant violated the labor law, in not furnishing safe, suitable, and proper contrivances, so constructed, placed, and operated as to give proper protection to the lives and limbs of its servants, also presented a question of defendant's negligence, requiring its submission to the jury. McLaughlin v. Eidlitz, 50 App. Div. 518, 64 N. Y. Supp. 193; Swenson v. Wilson & Baillie Mfg. Co., 102 App. Div. 477, 92 N. Y. Supp. 849; Rooney v. Brogan Construction Co., 107 App. Div. 258, 95 N. Y. Supp. 1; Marino v. Lehmaier, 173 N. Y. 530, 66 N. E. 572, 61 L. R. A. 811.

The defendant's contention that its duty was, not to furnish a safe place for its workmen, but to furnish a place reasonably safe in its natural condition, and such place becoming dangerous only as the work progressed, the defendant is not liable, is without merit. The rule applicable in this case is well stated in McGovern v. Central Vermont R. R. Co., 123 N. Y. 280, 25 N. E. 373, as follows:

"When directing the performance of work by the servant in a place which may become dangerous, and such danger may be foreseen and guarded against by the exercise of reasonable care and prudence on the part of the master, it is his duty to exercise such care and adopt such precautions as will protect the servant from avoidable danger. This is the master's duty, and however he may choose to exercise it, whether through the supervision of a superintendent or some lower grade of employment, it still continues his duty, and not until he shows that it has been properly performed can he claim exemption from liability for injuries occasioned by its nonperformance."

See, also, Scandell v. Columbia Construction Co., 50 App. Div. 512, 64 N. Y. Supp. 232.

The contention that, in addition to foot passengers, automobiles, trains, pedestrians, vehicles, and trolley cars passed continuously over plaintiff's head while at work, and the spot where he stood when injured, is not supported by the evidence, which is that the elevated tracks had never been used and were just being laid. That no cars were being operated over them follows as a matter of course. That plaintiff was in the space under these tracks, and the only work that was going on over the place where he was injured was the laying of the ties and rails of that road, which was being done entirely by men in the employ of the defendant, leaves no warranted ground for the assumption that cars, pedestrians, automobiles, and other vehicles were using the elevated railway, on the bridge from which the block fell, for

traveling purposes, or that travel upon the extreme outer traffic zones of the bridge was the cause of the block of wood falling from the elevated road into the storage yard. The case is not, therefore, as contended, like those in which a recovery has been denied because of large numbers of workmen of different contractors being at work on the building at the time the object producing the injury fell therefrom, and it was not shown which contractor's employés were guilty of the negligence causing the accident, and the cases cited have no application.

In the case at bar the answer admits the allegation of the complaint that the defendant was contractor for and engaged in performing the structural work at the Manhattan terminal of the Williamsburgh Bridge in the borough of Manhattan, city of New York, and the evidence shows that no work was being done on the bridge terminal over the place where plaintiff was injured, at the time of the accident, except by defendant's servants, and there was no travel of any kind over or upon that portion of the bridge from which the block of wood that injured plaintiff fell. In this connection, see Zettel v. Taylor, 128 App. Div. 251, 112 N. Y. Supp. 639.

It was error upon the part of the learned trial justice to take the case from the jury. The questions as to defendant's negligence, the contributory negligence of plaintiff, and of his assumption of the risk of the employment, were for them to decide.

Judgment reversed, and a new trial granted; costs to abide the event. All concur; MILLER, J., in result.