# CASES DETERMINED

# January Term, 1905.

GRAMS, Executor, Respondent, vs. C. REISS COAL COMPANY,
Appellant.

*January 31—May 2, 1905.*

*Master and servant: Negligence: Personal injuries: Fellow-servants:
Evidence: Presumptions: Safe appliances: Repairs: Cause of
action.*

1. In an action for personal injuries causing the death of an em-
ployee, the evidence, stated in the opinion, is *held* to establish
that the master provided reasonably competent and careful fel-
low-servants to work with the deceased in their common employ-
ment.
2. Where there is nothing to show but that due care has been exer-
cised by the master in the choice of servants, a presumption of
fitness arises which continues until overcome by proof of spe-
cific acts or conduct tending to show incompetency and negli-
gence which either came to the master's knowledge, or which,
by exercising ordinary care, he ought to have known.
3. A master fulfils his measure of duty to his servants if he pro-
vides reasonably competent and careful persons to perform the
work of operating machinery and keeping it in proper inci-
dental repair and adjustment, and supplies proper and suitable
material therefor.
4. Such incidental repair and readjustment of parts of appliances as
arise within the detail of the work in the ordinary prosecution
of a business, and which can easily be remedied by workmen,
are not to be classed with those which are unusual in their na-
ture and permanent in their character, or which are such as
require the help of a skilled mechanic.

5. A person making incidental repairs and readjustments of appliances is doing servant's duty for his master, and is a fellow-servant to all employed in the common service, while those who make repairs and readjustments which are unusual in their nature and permanent in their character, or such as require a skilled mechanic, are acting in the master's place or as vice-principals to those employed with them in their master's business.
6. In an action for personal injuries to an employee causing death, the evidence, stated in the opinion, is *held* to show that the persons who caused the injuries were fellow-servants of the deceased, and, no negligence being shown on the part of the master, there was no liability for the damages sustained.

APPEAL from a judgment of the circuit court for Ozaukee county: JAMES J. DICK, Circuit Judge. *Reversed.*

This is an action by the executor of the will of Frederick Grams, deceased. It is alleged that the deceased was in the defendant's employ, and was engaged as a shoveler in transferring coal from boats to its coal docks and yards and thence to cars for shipment; that while so engaged for the defendant he was fatally injured on the night of October 5, 1901, by a filled iron bucket of coal falling on him, causing him serious injuries, which made him helpless from that time until his death, which occurred May 11, 1902. It is averred that the injury was caused by defendant's negligence, consisting in a failure to provide a reasonably safe place, suitable machinery, and reasonably competent and careful servants for conducting its business, and that such negligence was the proximate cause of the injuries to the decedent, for which damages are claimed. It appears from the evidence that the deceased was so employed by the defendant, that he was injured, and died at the time alleged. The facts surrounding the accident were substantially as follows: The defendant, a corporation, in conducting its business of transferring coal from boats to its yards and to cars, used a rotary derrick operated by steam power, and carried upon tracks resting upon a trestle of from seven to ten feet in height. This derrick was being operated by two men, one of whom attended the steam-power machinery, while the other at-

tended to the operation of the hoisting derrick for transferring the coal by means of buckets. The deceased was engaged in shoveling coal into buckets, which when filled were raised to the end of the boom and swung to the place where their contents were dumped into chutes or cars. The derrick had all the necessary parts, and was constructed in a manner suitable and fitted for the accomplishment of its purpose. The buckets were raised by a cable passing over a wheel at the end of the boom, and thence to the hoist drum of the derrick at the other end of the boom, which was attached to the engine resting on the trucks, and the boom of the derrick was then swung into place for dumping the coal. In raising the buckets of coal to the end of the boom the cable would be drawn by coiling it on the hoist drum until the bucket was raised to the required height, when the buckets were held in place by a compression brake on the coil drum until released for dumping. The brake consisted of a steel brake band encircling the drum with hard wooden blocks bolted to the inside surface. The ends of the brake band were attached to an eccentric and a lever, and the brake was so constructed that when the operator pressed down upon a treadle on the operating platform the band was compressed, thus setting the brake by pressing the blocks against the drum. One end of the band is riveted to a threaded bolt, which is screwed into a threaded nut attached to the eccentric. This nut is forked to allow the eccentric to swing between the forks. The eccentric is fastened to the forked nut by a bolt held in place by a nut. As the blocks of wood inside the brake wear off, the resulting slack is taken up by drawing in the brake band by turning the forked nut on the threaded bolt attached to the band. These adjustments were required to be made from time to time in the operation of the derrick. To make the adjustments at the time in question the operator removed the bolt which fastened the forked nut to the eccentric, replaced it by a smaller one, and then attempted, by turning the forked nut, to take up the slack of the drum sufficiently to press the blocks firmly against the

drum so as to cause the brake to lock. The men operating the brake were instructed to make the necessary adjustments and repairs, and were furnished with materials with which to make them. Such repairs and adjustments had always been made by the men operating the derrick. On the evening in question, Bierman, one of the employees who operated the brake on the hoist, found that the brake failed to hold the buckets of coal in place when they were raised to the end of the boom ready to be swung into the proper place for dumping. It appears that this resulted from the wearing away of the blocks in the brake band, so that when the brake was set or locked it would not hold the weight of the buckets filled with coal—a weight of about 2,500 pounds. The operator's (Bierman's) testimony—besides which there is none on the subject—is to the effect that he observed that the eccentric did not have sufficient play in the forked nut to take up the slack, caused by the wearing away of the blocks, which insufficiency he attributed to the use of a three-quarter inch bolt fastening the eccentric and the forked nut together; that he therefore replaced it with a five-eighths inch bolt, which so adjusted the eccentric and the forked nut that they operated properly; and that this readjustment was required to be made as other repairs in the usual operation of the derrick. After the change in bolts was made by him, he tightened the forked nut as much as, in his judgment, was necessary to take up the slack in order to lock the brake and properly operate the hoist, and he then directed his co-employee to start the hoist and lift the bucket filled with coal. After the bucket had been raised to the required height the brake was set as firmly as the machine allowed, but it failed to hold the bucket in place, and the bucket then dropped and struck the deceased, causing the injury complained of, and he then gave the forked nut another turn, and thereafter the brake operated properly without any further adjustment, and was continued in use in operating the derrick. It appears that Radlaff and Bierman had been en-

gaged as operators on this and other hoisting derricks for a number of years prior to the accident. Aside from the facts and circumstances of this accident there is no evidence tending to show that they were incompetent to operate this machinery. It is without dispute that the servants operating the derrick were instructed and directed to make the repairs rendered necessary in the daily use of the appliances employed in the ordinary conduct of defendant's business, and that defendant had furnished sufficient and proper materials for making them. The issues were submitted to a jury upon a special verdict and the evidence, and they found as follows: (1) That the hoisting machine and the brake attachment were out of repair and unsafe at the time of the accident; (2) that defendant, by the exercise of ordinary care, ought to have known and have discovered its defective and unsafe condition and have remedied it before the accident occurred; (3) that the deceased was not guilty of a want of ordinary care in not knowing of its unsafe condition before the accident; (4) that the persons employed to operate the derrick and brake attachment were not reasonably competent and careful servants; (5) that the defendant, by the exercise of ordinary care, ought to have known that the servants operating the derrick and brake attachment were not reasonably competent and careful persons; (6) that deceased was not guilty of a want of reasonable care in failing to know that such servants were not reasonably competent and careful; (7) that the deceased was not guilty of any want of ordinary care contributing to the injury; (8) that defendant's negligence was the proximate cause of decedent's injuries; and (9) that, if plaintiff was entitled to recover damages, they assessed and allowed the sum of $7,046. Upon this verdict the court awarded judgment in plaintiff's favor. This is an appeal from such judgment.

For the appellant the cause was submitted on the brief of *M. C. Phillips* and *Francis Williams*.

*Simon Gillen*, for the respondent.

The following opinion was filed February 21, 1905:

SIEBECKER, J.   The evidence relating to the controversy is
practically undisputed.   The plaintiff asserts the liability of
defendant under the proofs submitted, upon the grounds that
defendant has failed in its duty in two respects: (1) A failure
to provide reasonably competent and careful fellow-servants;
and (2) a failure to keep the tools and apparatus furnished to
conduct the business in a reasonably safe condition of repair.
The jury found that defendant had failed in its duty in both
respects, and that such negligence proximately caused the in-
juries complained of.

The defendant requested the court to rule that the evidence
established no grounds of negligence in respect to the duty
of providing reasonably competent and careful servants to
work with the deceased for the defendant in the common em-
ployment of transferring coal.   An examination of the evi-
dence justifies appellant in urging an exception to the ruling
of the court refusing this request.   It is shown that the two
employees (Bierman and Radlaff) operating the derrick and
brake attachment had been engaged in such employment on
like and similar machines for many years prior to the time of
the accident, and, so far as shown, had theretofore performed
their duties carefully and competently.   It also appears from
their management and operation of the machine on the occa-
sion in question that they had a comprehensive understanding
of the appliance and understood how to make the needed re-
pairs and adjustments liable to require attention in its ordi-
nary use, and there is no proof that prior to the time in ques-
tion they had ever performed their duties in a careless man-
ner.   This state of facts establishes no negligence on the part
of defendant in providing reasonably careful and competent
servants and in retaining them in its service.   It is true there
is proof tending to show they were careless in testing the brake
after readjusting some of its parts at the time of the accident,

but such proof is not sufficient to charge the master with negligence, since no prior occurrence of such or similar conduct, tending to establish negligence, is shown, which could have come to the defendant's knowledge, or which, in the exercise of reasonable care, it ought to have known.   When there is nothing to show but that due care is exercised by the master in the choice of servants, a presumption of fitness arises which continues until overcome by proof of specific acts or conduct tending to show incompetency and negligence which either came to the master's knowledge, or which, by exercising ordinary care, he ought to have known. *Baulec v. N. Y. & H. R. R. Co.* 59 N. Y. 357; *Mich. Cent. R. Co. v. Gilbert,* 46 Mich. 176, 9 N. W. 243.

The court also held that the evidence justified the finding that defendant was negligent in repairing the brake attachment of the derrick, thereby making it an unsafe appliance, and that such negligence proximately caused the injuries to deceased.   The fact that the brake was defective is not disputed, nor is there any substantial controversy as to what caused the defective operation of it when the accident happened.   As above stated, it resulted from the acts of those who operated the hoisting derrick.   Bierman, one of the servants operating the brake, found that a part of the brake needed readjustment or repair because the wooden friction blocks had been worn and no longer locked the coil drum which held the filled coal bucket in place when it was raised to the end of the boom.   In making this repair he followed the customary practice and the specific direction of the defendant's superintendent that the persons employed to operate the derrick should make all necessary repairs and readjustments of parts of the brake resulting from the wearing away of the friction blocks, and should make the other ordinary repairs involved in the daily use of the machine.   It is perfectly clear that the specific act of negligence relied on in the making of the repairs of this brake attachment was one of the incidental repairs, or read-

justment of parts of the machine, coming within the detail of the daily work of the operator of the derrick, and as necessary to be done in the ordinary prosecution of defendant's business. Under such circumstances the master fulfils his measure of duty if he provides reasonably competent and careful persons to perform this work and if he supplies proper and suitable material for keeping the apparatus in a proper condition of repair. Such incidental repairs and readjustments of parts of appliances as arise within the detail of the work in the ordinary prosecution of a business, and which can easily be remedied by workmen, are not to be classed with those which are unusual in their nature and permanent in character, or which are such as require the help of a skilled mechanic. A person rendering the former kind of services is doing servant's duty for his master, and is a fellow-servant to all others who are employed in the common service, while those performing the latter class of services are acting in the master's place or as vice-principals to those employed with them in conducting the master's business. Since the decedent's injuries were caused by the acts and conduct of Bierman and Radlaff, who, under the facts of the case, are fellow-servants, and no negligence being shown on defendant's part, there is no liability by it for the damages sustained by the plaintiff. The doctrine controlling on this branch of the case, as stated in *Cregan v. Marston,* 126 N. Y. 568, 27 N. E. 952, arises out of the implied contract between the master and servant:

"Where the facts show that in the understanding of both parties a class of ordinary repairs are to be made by the servants with materials furnished by the master for that express purpose; that they and he regarded it as a detail of their own work; that it is something entirely within their capacity, and not dependent upon the skill of a special expert; and that the necessity springs from their daily use of the appliance, occurs at different and unknown periods in their service, and is open to their observation in the absence of the master,—the inference is inevitable that the contract relation between the par-

ties makes it a duty of the servants and a detail of their work to correct the defect, when it arises, with the materials furnished." *Okonski v. Pennsylvania & O. F. Co.* 114 Wis. 448, 90 N. W. 429; *Portance v. Lehigh Valley C. Co.* 101 Wis. 574, 77 N. W. 875; *Van den Heuvel v. National F. Co.* 84 Wis. 636, 54 N. W. 1016; *Williams v. North Wis. L. Co.* 124 Wis. 328; *Quigley v. Levering,* 167 N. Y. 58, 60 N. E. 276; *Kimmer v. Weber,* 151 N. Y. 417, 45 N. E. 860; *Ling v. St. P., M. & M. R. Co.* 50 Minn. 160, 52 N. W. 378; *Wosbigian v. W. & M. Mfg. Co.* 167 Mass. 20, 44 N. E. 1058; *Kehoe v. Allen,* 92 Mich. 464, 52 N. W. 740; *Nord Deutscher Lloyd S. Co. v. Ingebregsten,* 57 N. J. Law, 400, 31 Atl. 619.

A verdict should have been directed as requested, upon the grounds above stated.

*By the Court.*—Judgment reversed, and the cause remanded with directions to enter judgment dismissing the complaint.

KERWIN, J., took no part.

A motion for a rehearing was denied May 2, 1905.