YEZICK, Appellant, vs. CHICAGO BRASS COMPANY, Respondent.

*January 8—March 9, 1909.*

*Master and servant: Injury: Dangerous working place: Evidence: Assumption of risk.*

1. In an action for injuries to a helper in a brass foundry, alleged to have been caused by a defect in the platform on which he was working, the evidence is *held* to establish, contrary to the verdict of the jury, that the platform was reasonably safe when he went to work on the morning of the accident, and not to show any negligence or failure of duty on the part of the defendant in respect to keeping it safe.

2. If, after plaintiff began work on the platform on the morning in question, the boards thereof were burned or became displaced so as to render the place dangerous, the defect or danger being as readily discoverable by him as by any other person in defendant's employ, he must be held to have assumed the risk of injury.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries alleged to be due to the negligence of the defendant. The defendant operated a brass foundry at Kenosha, Wisconsin. In the foundry the metal pots and crucibles for melting the brass were placed in a row containing thirty-two pots. Four cranes were provided for handling the pots of molten metal, each crane being expected to handle eight of the pots. The divisions of the pots made by the cranes were designated as "floors" among those working in the foundry. The metal pots are somewhat larger than an ordinary water pail and are placed about two feet apart. In front of the row of pots is a platform about four feet wide supported by a framework of iron. The part of the platform in front of the first floor of pots was made of strips of sheet iron. The remainder of the platform was made of loose pine boards resting on the iron

framework.  The ashes and cinders from the fires under the crucibles are removed and placed in an ash pit underneath the platform.  For doing this work the loose boards are removed from the platform, and after the ashes have been removed the boards are replaced upon the iron framework. Hot cinders and bits of fire are sometimes carried from the fires which are about the iron pots containing the brass when these pots are raised from the crucibles with the cranes in order to pour the molten metal into molds, and these hot cinders and bits of fire at times drop onto the pine boards and set them afire.  The molten metal is sometimes spilled upon the boards and sets fire to them.  These fires are extinguished by the workmen with water standing near in pails.

The iron pots have metal covers which slide back and forth. An iron rod with a bent end to be placed in a hole in a projecting knob on these metal covers is provided for pushing back the covers to determine the condition of the brass in the pots.  The workers are more or less accustomed to push off the covers by a kick upon these knobs.  A caster and one or two helpers are engaged on each floor of pots.  Plaintiff was a helper when he was injured.  The defendant had provided a carpenter for replacing the boards which might be burned or otherwise damaged.  Defects were reported by the caster and transmitted to the carpenter.

Plaintiff when he was injured was kicking or pushing off the cover of one of the pots on the third floor in order to determine whether the metal was ready for pouring.  In doing this the board under his left foot tipped or broke.  His left foot went into the ashes under the platform and his right foot was plunged into the pot of molten metal, causing the injuries for which he seeks damages.  The injury was sustained between 8 and 9 o'clock on a Monday morning.  The plaintiff had been at work for something over four hours.  The evidence showed that on the previous Saturday evening, between the hours of 9 and 11, the platform had been left in repair

by the carpenter and had been swept and inspected by the caster who had charge of the pots on floor 3 and by him found sound.

The jury found that the defendant had negligently permitted a defect to exist in the platform and that it had existed for a sufficiently long time for the defendant in the exercise of ordinary care to have repaired it. Plaintiff was found to have been free from contributory negligence. The court granted defendant's motion for judgment notwithstanding the verdict, holding that the evidence failed to show that the defendant was negligent as charged, and that, if the floor was defective and unsafe, the plaintiff in the exercise of ordinary care knew it or ought to have known it. This is an appeal from the judgment so ordered.

For the appellant there was a brief by *Calvin Stewart* and *Wallace Ingalls,* and oral argument by *Mr. Ingalls.*

For the respondent there was a brief by *Harper & Mc-Mynn,* attorneys, and *Peter Fisher,* of counsel, and oral argument by *R. N. McMynn.*

SIEBECKER, J. The plaintiff's objection to the dismissal of his complaint, on the ground that defendant's liability was not established, presents, first, the inquiry: Does the evidence tend to show that the defendant negligently omitted to furnish plaintiff a safe place in which to work? It is contended that the evidence is sufficient to support the claim that the floor on which plaintiff worked at the time of injury was defective and unsafe. This claim calls for consideration of defendant's duty to provide a reasonably safe place for plaintiff to work in the double aspect of its duty to furnish him such a place when he was first put at work and its duty to exercise reasonable care to maintain the safety of this place during the time he continued to occupy it in the course of his service.

"A reasonably safe working place having been furnished the servant, the absolute duty in that regard is satisfied. Then becomes active the secondary duty to exercise ordinary

care to preserve for the servant the reasonably safe condition of his working place. In case of its becoming unsafe during the course of his employment, and the servant receiving an injury thereby before the master has knowledge of the existence of the danger or has reasonable opportunity to obtain such knowledge, and reasonable opportunity to remedy the danger, he is not liable." *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48.

Applying these principles to the case before us, the first inquiry is: Was the working place furnished plaintiff by the defendant a reasonably safe one when he went to work on the morning of the Monday on which he was injured? Upon this subject we have the positive testimony of the carpenter that he examined the floors on Saturday and found them in good repair, that of the caster who swept and cleaned floor No. 3 and observed that it was in good condition, and that of another caster that he cleaned the floor adjoining the one complained of at 9 o'clock that night and then passed over the one in question and observed that it was in the condition in which it had been usually used. Other witnesses testified to the same effect. It also appears that the plaintiff had been working on these floors, knew of what material they were made, how the boards were placed over the ash pit, and that they lay loose on the iron framework. On the morning when he went to work he could see and observe it and saw nothing that indicated a defect. The only evidence relied on to warrant an inference that the floor was not safe when plaintiff went to work on Monday morning is plaintiff's statement that he heard the sound of a breaking board when he fell, and that of another witness who states that, when he looked at the place immediately after the plaintiff fell, he saw that one board was tipped. The plaintiff's statement that he heard the noise of a breaking board cannot be held to show that the board was defective and broke, because the direct testimony of all who saw the board thereafter is that they found that it was not broken and that it was in its place. This evidence, therefore, is too vague, uncertain, and speculative to permit of an infer-

ence that the place was not safe, as to the strength of the boards, when the plaintiff went to work in the morning. The statement that the board was tipped is not evidence that it was defective, for it appears that all of the boards over the ash pit were loose and could be turned up. There is no claim that the manner in which this floor was constructed constituted a defect, and, as was shown, it was constructed in that way to enable defendant to empty the ash pits underneath. The evidence therefore established that the defendant furnished the plaintiff a reasonably safe place when he started work on Monday morning.

The inquiry then arises: Did defendant exercise reasonable care to preserve plaintiff's working place in a reasonably safe condition during the time he worked on the floor on Monday morning before he was injured? It is urged that, if the place was safe when the plaintiff began working Monday morning, the evidence tends to show that it became dangerous during the time it was being used that morning in prosecuting defendant's business, and that the defendant was negligent in not ascertaining its dangerous condition and in not repairing it before the injury. The trial court held that there was no evidence tending to show defendant negligent in this respect, and we find no evidential facts tending to support this contention. The defendant's representatives, charged with making repair of any defects which might arise during the working hours, were not informed or notified before the accident happened, by the casters or plaintiff, of any defects in this floor which, it is claimed, had arisen during the progress of the work during the morning. Nor is there evidence that they carelessly omitted to observe such defects or to give them proper attention during this period. Under such circumstances defendant's conduct is free from the charge of having negligently omitted performance of the duty to maintain a safe working place for the plaintiff.

It is asserted with confidence that the court erred in hold-

ing that if the place became unsafe through defendant's negligence while the plaintiff was at work, then he is precluded from recovery because the defect was one obviously within his view and observation and he assumed the risks incident thereto. It seems clear that if, after plaintiff began work, the boards were burned or became displaced on the iron framework so as to render the place defective and dangerous, then this state of things would be as readily observed by the plaintiff as by any other person engaged in the service. The place was within his constant view and had been used by him continuously. As stated by the trial court in passing opinion on this point:

"An employee cannot . . . close his eyes and senses to dangers that are obvious or which, in the exercise of ordinary care, are discoverable, and then, when injured, claim immunity from responsibility."

It is manifest that if a defect such as is complained of existed, it was as readily discoverable by the plaintiff as by any other person in defendant's employ. Under these conditions the plaintiff must be held to have assumed the risk of injury and he cannot recover against the defendant. *Relyea v. Tomahawk P. & P. Co.* 110 Wis. 307, 85 N. W. 960; *Grams v. C. Reiss C. Co.* 125 Wis. 1, 102 N. W. 586; *Stork v. Charles Stolper C. Co.* 127 Wis. 318, 106 N. W. 841; *Rahles v. J. Thompson & Sons Mfg. Co.* 137 Wis. 506, 118 N. W. 350.

The court properly awarded judgment dismissing the complaint.

*By the Court.*—Judgment affirmed.