BERTULIS, Respondent, vs. ILLINOIS STEEL COMPANY, Appellant.

*October 29, 1912—January 28, 1913.*

*Master and servant: Injury from defective appliances: Duty to inspect: Simple tools: Damages.*

1. In an action for injury to an employee engaged in piling steel billets which were being unloaded from a car in defendant's steel plant, caused by the falling of billets from the tongs which held them, the evidence is *held* to show that the duty to inspect the tongs as to their sharpness and fitness for the work rested upon the defendant and that it had not been committed, as an operative detail, to the employees engaged in such work of unloading.

2. Where tongs were used for lifting at one time three billets of steel, of 1,065 pounds each, placed side by side and held in the tongs only by means of the friction between their gripping edges and the plain surfaces of the billets, and where special knowledge and experience were required to determine when the gripping edges of the tongs were in proper condition to prevent the billets from falling, such tongs were not a simple tool so that the keeping of them in proper condition might be left by the master to the employees using them.

3. For the breaking of both bones in the leg of a laborer fifty years of age, resulting in long confinement, much suffering, shortening of the leg, permanent impairment of its usefulness, and probably permanent need of crutches, an award of $6,000 (reduced from $7,500 by the trial court) is *held* not so excessive as to warrant interference by this court.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries suffered by the plaintiff while employed by the defendant. The plaintiff at the time of the injury, July 20, 1909, was a common laborer, earning about sixteen cents per hour. He was a Lithuanian, about fifty years of age, and had been in this country for twenty-seven years. The defendant conducts a steel plant and rolling mill at Bay View in the city of

Milwaukee.    The plaintiff was injured about 8 o'clock in the evening while working with a gang of men in unloading and piling steel billets in the billet yard.    The positive testimony is that the billets, which were being handled by the gang with which the plaintiff was working, were five and one-half by six inches, and ten feet two or three inches in length, weighing 1,065 pounds.    The billets were unloaded from the cars by means of cranes.    Two men on the car placed three billets side by side and adjusted the tongs, lowered from the boom of the crane, about the center of the billets.    Upon a signal being given, the engineer raised the cable to which the tongs were attached, and the billets, held by the tongs, were raised from the car.    The boom was then swung around so that the billets were suspended over the place where they were to be piled.    As the billets were lowered two men on the ground caught hold of them, one at each end, and guided them into the place where they were to remain.    When these men had the billets in proper position a further lowering of the cable would allow the tongs to open automatically, and they would then be raised and moved back to the car where another load had been prepared by the two men in the car.    While waiting for another load the men on the ground would adjust the billets in the pile.    The tongs used in this work are shaped like ice tongs.    Those used in this case came into contact with the sides of the billets by two sharp edges about three inches long.

At the time the plaintiff was injured he and his fellow workman on the ground were just reaching up to grasp the billets in the tongs when the load fell from the tongs.    Two of the billets fell upon the pile at which the plaintiff was working and the other fell upon the plaintiff's leg, breaking both bones.    While the plaintiff lay on the ground under the billet he had the engineer lower the tongs for his examination.    He testifies that the tongs were dull and that one of the edges which came in contact with the billets had been

broken off about a quarter of an inch for a length of about one and one-half inches.

The plaintiff was taken to the hospital and was there for three months. Thereafter he remained for three months in bed at his home. He cannot stand on the injured leg and is compelled to use crutches. He testified that he suffered pain all the time, day and night. The physician testified that the bones of the injured leg overlap at the points where they were fractured; that the leg is not normal, in that it is not straight and is about two inches shorter than the other; that the bones are not as strong as they should be and that any heavy force is likely to displace them; and that the plaintiff will probably need crutches all his life.

In unloading billets of various sizes and weights the defendant uses tongs of different sizes. The chief steel inspector for the defendant, who was superintendent of the billet docks at the time the plaintiff was injured, testified that it was the duty of the superintendent of the docks to see that the proper tongs were used by the men in unloading billets from the cars. He also testified: "The men working there . . . get their orders as to what kind of tongs are to be used from the foreman." He stated that the foremen were to see that the tongs were all right before they started to work; that it was their duty "to see that the tongs are not dull or they are not broken. If the tongs get too dull, or the edges completely worn off, they need sharpening. When the hooks become dulled they will slip." "If they are defective it is our duty to see that they are put proper in any shape." The day foreman testified: "I and Mr. Wheatley [the superintendent of the billet docks], we inspect the tongs." "Q. It was your duty, was it not, to see that the hooks used were sharp and the edges were all right? That was part of your duty, wasn't it? A. Sure." The night foreman testified: "To see that the hooks put on the crane is in good condition is the first thing I do when I start working with the people."

"I went to work that night at 6 o'clock. I looked on the hook."

The jury returned a special verdict finding that the plaintiff was injured by the billet falling before the tongs were relaxed by the billets striking the pile; that the tongs were not in a reasonably safe and sufficient condition for the purpose of carrying the billets because the tongs were dull and the lip or edge of one of the tongs was partly broken; that the unsafe condition of the tongs was the proximate cause of the injury; that the defect had existed for such a length of time that the defendant, in the exercise of ordinary care, ought to have known thereof in time to have prevented the injury; that the plaintiff ought not, in the exercise of ordinary care, to have known, prior to the injury and in time to have avoided the same, that the tongs were not reasonably safe; and that no failure on the part of the plaintiff to exercise ordinary care proximately contributed to the injury.

The court ordered judgment for the plaintiff for $6,000 on condition that he remit $1,500 from the sum of $7,500, the damages found by the jury. This is an appeal from the judgment awarding the plaintiff $6,000 as compensation for his injuries.

For the appellant there was a brief by *Van Dyke, Rosecrantz, Shaw & Van Dyke,* and oral argument by *Clarke M. Rosecrantz.*

*Harry M. Silber,* for the respondent.

The following opinion was filed November 19, 1912:

SIEBECKER, J. The first contention of the appellant raises the question whether, under the facts and circumstances of the case, the duty to inspect the tongs rested on the defendant or whether it had been committed as an operative detail of the work to the men engaged in operating the crane and to those unloading the billets from the car and piling them in the yard. The foregoing statement of the facts describes, as shown by the evidence in the case, the procedure and the way

in which this work was performed. The evidence discloses that, under the regulations for conducting this work, it was the billet yard superintendent's duty to see to it that safe and proper tongs were supplied for lifting the billets from the cars to the places where they were to be piled in the yard. It also appears that the foremen of the gangs of men doing this work were charged, under the superintendent's direction, with the duty of inspecting the tongs every morning and evening before starting the different shifts of men to work and of giving orders to the men as to what tongs they should use. The evidence is clear that the defendant, through its billet yard superintendent and the foreman in charge of the work of unloading and piling the billets in the yard, was charged with the duty of inspecting the tongs as to their sharpness and fitness for the work regularly every morning and evening, and that such inspection was not treated as an operative detail of the work which every one engaged thereabout was to perform. Furthermore, it is established by the evidence that the service of inspection was not, under the circumstances, of so ordinary a nature that any one could perform it. The evidence on the litigated issue as to what constituted a sharp and sufficient tongs clearly shows that it required special knowledge and experience to determine when the gripping edges of the tongs were in proper condition to prevent the billets from falling out of the tongs while they were held suspended. A mechanical device for lifting three such billets of 1,065 pounds each, placed side by side, by means of the friction of the grip on the mouth of these tongs and the flat surfaces of the billets, is not so simple and ordinary a mechanical device, and the operation is not so simple and ordinary, that any one of ordinary intelligence can be held to understand them and be able to judge of the fitness of the tongs to safely conduct the work. The operation was somewhat unusual in its character, and knowledge of the fitness and safety of the tongs required special knowledge and information, not possessed by the ordinary laborer working on

the ground piling billets.  This condition was fully recognized by the defendant, and hence it made it the duty of the superintendent and the foremen to select the tongs to be used, and it required them to inspect them at least twice daily, as to their sharpness and condition of repair, to ascertain their fitness and safety for the operation.  These facts and circumstances present a case wherein it was the master's duty to inspect the tongs as to their condition.  The evidence abundantly shows that the defendant regarded this as its duty and that it imposed it on the superintendent and foremen in charge of the work and required of them that they see to it that the tongs used were in a reasonably safe and proper condition for the purpose of carrying the billets in the operation of unloading them from cars and piling them in the yard. The jury has found that the tongs used to carry the billets at the time in question were not reasonably safe for the purpose, on account of their dullness and because of a break in one of the lips, that such defects were the proximate cause of the plaintiff's injury, and that the defendant ought, in the exercise of reasonable care, to have discovered these unfit conditions of the tongs in time to have prevented the injury.  The facts of the case differentiate it from those of which *Grams v. C. Reiss C. Co.* 125 Wis. 1, 102 N. W. 586, is an example, wherein the defect in the appliance complained of pertains to an incidental repair of appliances to be made by the injured servant or one of his fellow-servants, and the case comes within the well established rule that the inspection of appliances is the employer's duty, and if he does not exercise ordinary care in this regard he is liable for the damage caused thereby.

It is contended that the evidence shows that the plaintiff and his fellow-servants were in a position to readily observe the condition of the tongs as to sharpness and fitness for the operation, and that they were supplied with another pair of tongs to be substituted by them in the usual course of the

operation of the business. This claim is not, as to the facts, in accord with the evidence. The findings of the jury that the plaintiff cannot be held, in the exercise of ordinary care, to have known of the defective condition of the tongs, and that no want of ordinary care on plaintiff's part contributed to the injury, also negative this contention. These findings are well supported by the evidence and free the plaintiff from fault. The claim that he and those working with him changed the tongs as part of their duty, whenever those in use became unsafe, is not what the evidence shows, for it appears that he and the other employees working on the ground were required to make such a substitution of tongs only when the foremen or the superintendent ordered this to be done in the course of their duty of inspection. This state of facts harmonizes with the findings of the jury on this question. These considerations negative all of the propositions advanced by the appellant against the correctness of the rulings of the court in denying its motion for judgment in its favor.

We find no errors in the charge of the court to the jury; it correctly states the law applicable to the case and sufficiently informed the jury of the law governing the rights of the parties to enable them to resolve the litigated issues submitted to them.

The claim that the damages awarded by the judgment are so excessive as to call for a reversal thereof cannot be sustained. The jury fixed the sum at $7,500. The trial court found upon consideration that this exceeded the amount shown by the evidence and awarded judgment for $6,000. We do not consider this to be so excessive as to warrant interference therewith on appeal, and the judgment must stand.

*By the Court.*—The judgment appealed from is affirmed.

A motion for a rehearing was denied, with $25 costs, on January 28, 1913.